A settlement agreement provided a formula for division of the equity in the marital residence upon the wife's remarriage or sale of the house, should either occur within five years of the divorce. Both events occurred within that time, but the husband was not paid the amount alleged due under the agreement. He petitioned the court for relief. Following a hearing, the court held in his favor. The wife appeals.
The divorce decree was rendered in 1982 and incorporated the following provision:
 "The real property located at 2728 Woodley Park, Montgomery, Alabama, is the property of Sara Morris Weathers and all right, title and interest of Grady Bruce Weathers is divested out of the said Grady Bruce Weathers and vested in Sara Morris Weathers. Husband further agrees to execute a deed to Wife relinquishing any right, title and interest he may have in said property.
 "Wife agrees that in the event she shall remarry or sell said house within five (5) years from the date of the Final Decree of Divorce, Husband shall receive one-half (1/2) of the equity. Husband's equity shall be determined by taking one-half (1/2) of the assessed value of $78,000.00, less the balance due as of June 1, 1982, on the first and second mortgages on said house. After five (5) years from the date of the Final Decree of Divorce, Wife shall be entitled to all equity on any sale." (Emphasis ours.)
The record shows that the husband wanted to sell the house at the time of the divorce and divide the equity then existing with his wife. The wife would not agree to that, and a compromise was reached, giving the house to the wife at the time of the divorce, but if she sold it or remarried within five years, the husband would receive half of the equity in the residence as valued at the time of the divorce. The wife testified that the residence was then worth between $80,000 and $90,000. The $78,000 figure included in the agreement was itself a compromise, apparently based upon a tax assessment of the house, arrived at when the wife would not agree to the inclusion of the higher valuation in the settlement agreement. The husband testified that the parties intended that the husband would receive a predetermined amount if the wife remarried or sold the house within five years of the divorce — that is, the assessed value ($78,000) minus the outstanding mortgages ($52,167), divided by two, which equals $12,916.
The agreement that was incorporated into the divorce decree was drafted by the wife's attorney. The husband testified that he did not become aware of the discrepancy between his intention regarding the disposition of the marital residence, and the result that would be reached under a literal interpretation of the agreement, until some two years after the divorce. At that time, he had petitioned for a termination of alimony payments to his wife, based upon the wife's remarriage or her living together with another man. The petition was granted, but the record shows that the wife was less than forthcoming regarding her changed marital status.
The wife was similarly less than candid regarding the sale of the house in 1985. The husband testified that he did not learn of the sale of the house until November 1986. The house had been rented for approximately one year prior to its sale at about $600 a month. It is unclear whether the rental payments were applied to the total purchase price of $70,000 or were received over and above that sales price.
The husband testified that he made two demands of his wife for the money due him under the agreement after his petition to terminate alimony was granted. He testified *Page 274 
that his wife refused these demands. His attorney advised him to see if the matter could be settled without going to court. In September 1986 the husband petitioned the court to enforce the agreement regarding the disposition of the marital residence.
Following ore tenus proceedings, the court determined that a literal enforcement of the settlement agreement would not reflect the true intent of the parties. The court then fashioned its order as follows:
 "The terms of the parties' settlement agreement that was made a part of their final Decree of Divorce contains language that ostensibly resolves the parties' marital home. However, the Court is of the opinion that said agreement does not reflect the mutual intent of the parties and, in fact, erroneously precludes, if literally interpreted, the husband from receiving any equity from the sale of the marital home. Further, the Court is of the opinion that if literally interpreted, the provision would be of little or no consequence."
It is well settled that where there is uncertainty and ambiguity in a contract, it is the duty of the court to construe the contract so as to express the intent of the parties. Reid v. Casey, 339 So.2d 79 (Ala.Civ.App. 1976). Also, since it is presumed that parties intend to make reasonable contracts, courts will give ambiguous contracts a reasonable construction to avoid unconscionable results.International Harvester Co. v. Bostick's Intern.,Inc., 365 So.2d 84 (Ala.Civ.App. 1978). And once it appears that a contract is ambiguous, the court will construe it more strongly against the party who prepared it.Wiregrass Const. Co. v. Tallapoosa River Elec. Cooperative,Inc., 365 So.2d 95 (Ala.Civ.App. 1978). The trial court in this case gave the agreement a reasonable construction, awarding the husband one-half the equity in the marital residence as predetermined in 1982. That construction is effectuated by the following part of the court's order:
 "[A]fter calculating the sales price of the former marital home and deducting closing costs and the satisfaction of existing mortgages, the court concludes that Mr. Weathers' one-half share in the net proceeds amounts to $12,916.09. Mr. Weathers is awarded a judgment in his favor and against Sara (Weathers) Knapp for which execution may issue. Mrs. Knapp shall forthwith pay the sum of $12,916.09 to Mr. Weathers."
We believe the trial court correctly found that a literal interpretation of the pertinent language of the agreement would deny the husband any equity from the sale of the marital home in contravention of the mutual intent of the parties. The agreement was ambiguous. The trial court was required to construe the settlement agreement to express the intent of the parties. The agreement to a "sale price" ($78,000) in 1982 is the key to determining the parties' intent, leading to proper construction of the agreement. Here the house sold for $70,000, so the husband benefits from the agreed-to equity formula. Had the house sold for more than $78,000, the equity benefit would have favored the wife; e.g., with a sale price of $80,000 minus the $52,167 mortgages, the $27,833 difference would have resulted in the wife's equity being $14,917, while the husband could have received no more than the $12,916.
The record shows that the wife received a net amount of approximately $23,635 cash from the sale of the house in 1985. So, when the husband's $12,916 is subtracted therefrom, the wife's part of the equity is approximately $10,719. The wife, consequently, maintains that such unequal shares amount to an inequitable division. We disagree. It is well settled in Alabama law that such division need not be equal. This court has previously held that great weight would be given to a trial court's construction of a separation agreement concerning equitableness of the division of marital real estate.Brothers v. Vickers, 406 So.2d 955 (Ala.Civ.App. 1981); Williams v. Williams, 460 So.2d 1354
(Ala.Civ.App. 1984). The lack of equality in the division of the sales proceeds here is grounded in the court's construction of the separation agreement, an agreement drafted by the wife's lawyer. *Page 275 
The wife contends that the husband's failure to litigate the disposition of the residence in his two previous petitions, and the lapse of four and a half years from the time of the decree without objection to the language in the agreement, bar him from bringing suit. We have held that the lapse of five years without an effort to enforce a divorce judgment does not give rise to a laches defense. Stubbs v. Puls,429 So.2d 1071 (Ala.Civ.App. 1983). The wife's collateral estoppel argument was raised for the first time on appeal and is therefore not properly before this court. Dobbins v. GetzExterminators of Alabama, Inc., 382 So.2d 1135
(Ala.Civ.App. 1980).
Finally, the wife contends that the court's order was, in effect, a modification of an agreement embodied in a final decree of divorce which could not be modified. We disagree. The court merely enforced compliance with what it determined to be a reasonable construction of the settlement agreement. That is not a modification of a property settlement. See Johns v.Johns, 473 So.2d 517 (Ala.Civ.App. 1985).
The case is affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.