The appellant, Joe Henderson, was indicted in February 1985 for the capital murder of Wilson Jolly, Sr. On May 30, 1985, the appellant was convicted of capital murder. On June 29, 1987, this court remanded the case to the trial court with instructions that *Page 1047 
that court conduct a Batson[1] hearing. See Henderson v. State,549 So.2d 105 (Ala.Cr.App. 1987). After the Batson hearing, the trial court found that the prosecutor had not given race-neutral reasons for striking two jurors and ordered a new trial.
On retrial, the appellant was convicted of the lesser-included offense of first degree robbery. Pursuant to the Habitual Felony Offender Act, the trial judge sentenced the appellant to life imprisonment without parole and ordered him to pay $50 to the Victims' Compensation Fund.
Fred Scott testified that on January 3, 1985, a man entered Jolly's Store, which is located on Jordanville Highway 229 in Elmore County, Alabama, and pointed a gun at the victim, Mr. Jolly. The man said:
 "Give it to me, give it to me. . . . If you don't give it to me, I will blow your damn brains out."
Mr. Scott testified that when Mr. Jolly attempted to move from his position at the counter, a shot was fired. Mr. Scott further testified that after the first shot he stopped looking because he was afraid and then he heard some struggling and a second shot. Mr. Scott then turned and saw blood coming from Mr. Jolly's neck.
Dr. Jimmy Durden, Mr. Jolly's physician, testified that when he arrived at the crime scene, Mr. Jolly was dead. He had a gunshot wound to the left side of his face and blood was coming from his ear, nose, and mouth.
 I
The appellant contends that the remark made by him when asked about the murder victim five hours after the murder should have been excluded because it was irrelevant and prejudicial. The appellant's remark in issue was made by him during an investigative interrogation by investigators five hours after the victim's death. The remark was introduced over the appellant's objection during the direct examination of Billy Clayton, a policeman employed by the City of Tallassee Police Department. Officer Clayton testified that when asked about the victim's death the appellant responded:
 "He told us that he had heard about him getting killed and what did we want him to do fall on his knees and cry? He didn't give a damn about the mother fucker."
(R. 199.)
The appellant argues that the trial court erred to reversal in allowing this testimony, because it was prejudicial and not relevant to the case.
 " '[R]elevancy . . . [is] within the sound discretion of the trial court. This discretion is not reviewable in the absence of a gross abuse of that discretion.' Raines v. Williams, 397 So.2d 86, 88 (1981) (citing, Costarides v. Miller, 374 So.2d 1335 (Ala. 1979), Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975)). Thus, the trial court's decision must be plainly erroneous before this Court may reverse a decision that the trial court is inherently better situated to render."
Baker v. Merry-Go-Round Roller Rink Inc., 537 So.2d 1, 2 (Ala. 1988).
The test of relevancy used by the appellate courts of Alabama has been described as follows:
 "[A] fact is admissible if it has any probative value, however slight, upon a matter in the case." C. Gamble, McElroy's Alabama Evidence § 21.01(1) (4th ed. 1991).
The rule of law as stated by this court in Barrow v. State,494 So.2d 834, 835 (Ala.Cr.App. 1986), is as follows:
 " 'The test of probative value or relevancy of a fact is whether it has any tendency to throw light upon the matter in issue even though such light may be weak and fall short of its intended demonstration.' Tate v. State, 346 So.2d 515, 520
(Ala.Cr.App. 1977). 'It is not necessary that each item of testimony, taken alone, be conclusively shown to prove the guilt of the defendant; but the question is whether each fact, in connection with all others, may be properly considered in forming a chain of circumstantial evidence *Page 1048 
tending to prove the guilt of the accused.' Russell v. State, 38 So. 291, 296 (Ala. 1905)."
We conclude that the hostile remark made by the appellant concerning the victim five hours after the robbery and murder was relevant to the case. The strong negative remark made by the appellant showed hatred towards Mr. Jolly. The remark "has some tendency to make the existence of the facts" concerning who killed Mr. Jolly and why "more or less probable than it would be without the evidence." See Dawkins v. State,455 So.2d 220, 221 (Ala.Cr.App. 1984). The remark concerning the appellant's feeling toward the victim was relevant to the issue at hand and its admission by the trial court was not error.
In addition, the appellant contends that this remark should not have been admitted into evidence at his trial because it was obtained in violation of Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda, which bars the use of statements given by a suspect during custodial interrogation, does not apply here because the appellant was not in custody when he made the remark.
Investigator James Jackson of the Alabama Bureau of Investigation and Officer Billy Clayton testified that they and two other officers went to the appellant's house to investigate the murder of Wilson Jolly, Sr. They knocked on the door, and they were given permission to enter by Ann Hayden, the appellant's wife. They were also given permission to look around. Investigator Jackson testified that the appellant was asked to sit in the living room but that he could get up and leave if he wished to do so. (R. 220.) The officers did not have their weapons drawn and did not use any threatening gestures towards the appellant.
As stated by this court in Lemley v. State, 599 So.2d 64
(Ala.Cr.App. 1992):
 " 'It is the compulsive aspect of custodial interrogation, and not the strength or content of the officer's suspicions at the time the questioning was conducted, which led the Court to impose the Miranda requirements with regard to custodial questioning.' " Finch v. State, 518 So.2d 864, 867 (Ala.Cr.App. 1987). 'The Court has "explicitly recognized that Miranda warnings are not required' . . . 'because the questioned person is one whom the police suspect." ' California v. Beheler, 463 U.S. [1121] at 1125, 103 S.Ct. [3517] at 3520, 77 L.Ed.2d 1275 (quoting Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).' Finch, 518 So.2d at 867. Although '[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime,' Oregon v. Mathiason, 429 U.S. at 495, 97 S.Ct. at 714 (footnote omitted), '[i]t is settled that the safeguards prescribed by Miranda become applicable [only when] a suspect's freedom of action is curtailed to a "degree associated with formal arrest." ' Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983))."
Here, the circumstances under which the interrogation was conducted did not reach the degree of restraint that requiresMiranda safeguards to be given. The appellant was in his own house with his wife, permission was given to allow the officers inside, and the questioning was part of a general investigation. See Beckwith v. United States, 425 U.S. 341,96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (interrogation in the suspect's house was noncustodial). Jackson v. State, 412 So.2d 302,306-07 (Ala.Cr.App. 1982) (Miranda warnings not required when officers who were conducting general on-the-scene investigation of recent homicide asked, "What happened?" and accused gave incriminating response); Primm v. State, 473 So.2d 1149, 1158
(Ala.Cr.App. 1985) (officer's inquiries at accused's home were investigatory rather than accusatory and did not requireMiranda warning). *Page 1049 
 II
The appellant asserts that the State should not have been permitted to introduce David Johnson's testimony from the appellant's earlier trial. During a pre-trial hearing, the State produced witnesses who testified to the unavailability of Johnson.
Bruce Matthews, a Montgomery County investigator with the district attorney's office, testified that he had searched for Richard Edwards, a.k.a. David Johnson, since January 1988 regarding pending multiple insurance fraud indictments. Investigator Matthews testified that he had contacted numerous members of Johnson's family, the postal inspector, motor vehicle representatives, and representatives of the telephone company during his search.
Officer Billy Clayton with the City of Tallassee Police Department also testified that he had contacted family members, as well as gas and water utility representatives in an attempt to locate Johnson. Officer John Perdue with the Alabama Bureau of Investigation had also attempted to locate the witness within two to three days prior to trial by contacting relatives, representatives of an electric power company, and a housing authority representative.
The following is well settled:
 "The testimony of a witness, in a former trial or action, given (1) under oath, (2) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (3) under circumstances affording the party against whom the witness was offered an opportunity to test his credibility by cross-examination and (4) given in litigation in which the issues and parties were substantially the same as in the present cause, is receivable as evidence in the present trial (5) when the personal attendance of the witness to testify in the present trial is not feasible."
C. Gamble, McElroy's Alabama Evidence § 245.07(1) (4th ed. 1991).
The question here is whether the fifth requirement was met. The party seeking to introduce the prior testimony must clearly demonstrate the unavailability of the witness and the reason therefor. Williams v. Calloway, 281 Ala. 249, 251-52,201 So.2d 506, 508 (1967). Whether the party seeking the admission of the prior testimony has produced sufficient proof of the "unavailability of an absent witness is addressed to the sound discretion of the trial judge." Nolen v. State, 469 So.2d 1326,1328 (Ala.Cr.App. 1985); Matkins v. State, 521 So.2d 1040, 1042
(Ala.Cr.App. 1987). The trial judge in this case specifically ruled that the State had sufficiently shown Johnson's unavailability so as to warrant the admission of his prior testimony. We find no abuse of discretion in this action.
 III
The appellant further contends that the State withheld exculpatory evidence in violation of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The appellant argues that the State was aware that David Johnson had lied three times during his testimony at the appellant's previous trial and that these lies should have been disclosed to the defense. Specifically, the appellant argues that the State failed to disclose to the defense 1) that the witness's real name was not David Johnson; 2) that he had lied about his place of employment; and 3) that he had lied when he stated that he had had no prior involvement with the law.
Only those matters which are timely raised and adversely ruled upon at trial are preserved for appellate review.Maul v. State, 531 So.2d 35 (Ala.Cr.App. 1987). We have carefully reviewed the record and there was no objection by the appellant as to any alleged failure by the State to disclose to him prior to trial the above matters. See R. 30-102 and R. 227-323. Thus, this issue is not preserved for review.
 IV
The appellant contends that the prosecutor's reference to the testimony of a witness at the first trial, Bob Watson, who is since deceased, and a remark about the theory of the case that caused the *Page 1050 
initial arrest of the appellant's brother, Bobby Henderson, were intended to inflame the jury. However, the statements complained of were introduced at trial without objections by the defense. And the fact that Bobby Henderson was also charged with murder in this case was first raised by the defense. (R. 342.) Moreover, after the prosecutor's closing argument, the trial court gave the following instruction:
 "THE COURT: I'm going to say this one more time. Objection overruled. The evidence in this case has come from the people that testified in this case and things I have admitted. It hasn't come from the lawyers. The jury's job is to determine what the evidence is. If anybody, any lawyer misrepresents the evidence, then they do so at their own peril. The jury is the trier of fact. They will make these decisions whenever it is time and whenever I have an opportunity to charge them and they go back to the jury room. That's about all I am going to say about it. I have said it three times."
"While in argument to the jury, counsel may not argue as a fact that which is not in evidence; nevertheless, he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning."Sasser v. State, 494 So.2d 857 (Ala.Cr.App. 1986). The prosecutor's remarks were based on evidence elicited in this case.
Furthermore, control of closing argument rests in the broad discretion of the trial judge and, where no abuse of discretion is found, there is no error. Thomas v. State, 440 So.2d 1216
(Ala.Cr.App. 1983). We find no error or abuse of discretion by the trial judge in this matter.
The judgment is affirmed.
AFFIRMED.
All the Judges concur.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).