Quincy Lee Patterson, the appellant, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975. He was sentenced to 30 years' imprisonment.
The evidence at trial tended to show the following. On April 30, 1993, Jerry Bennett, who owned an automobile repair business in Dothan, was shot and killed at his office. On the day Bennett was killed, Henry Shivers had walked past Bennett's place of business and had seen the appellant and Bennett talking. Bennett was sitting in a metal glider outside his office and the appellant was standing in front of him. Bennett was writing in a note pad. A short time later, Mr. Shivers heard a gunshot, but said that he did not investigate because the sound of gunshots was common in that area. Just after the shooting, Mary Franklin drove to Bennett's place of business to have him check her car. When he did not respond to her car horn or her calling his name, she telephoned the police. The paramedics arrived and Bennett was transported to a hospital where he was pronounced dead. Sgt. Stanley DeVane of the Dothan Police Department, the lead investigator in this case, testified that after gathering physical evidence at the scene, including photographs and a spent .25 caliber shell casing, and acting upon information from witnesses and an informant, he and another officer went to the appellant's house. After some preliminary questions, the officers read the appellant hisMiranda rights and obtained a consent to search. This search yielded a .25 caliber clip and two unspent .25 caliber rounds. The officers also recovered a piece of paper with a series of numbers in a column that totaled $1,568.00. The appellant told the officers that Bennett had worked on the appellant's car some weeks earlier and that he had paid Bennett $338.00 for the work. The appellant said that the car soon broke down and the appellant returned the car to Bennett for repair. When the appellant would not pay for the repairs, Bennett told the appellant that he was going to sell the appellant's car. The $1568.00 figure on the piece of paper represented the amount Bennett said the appellant owed him. The appellant said that, as Bennett was writing the figures, he shot him in the top of the head and then walked off. The appellant then showed the officers where he had hidden the gun he had used in the shooting, which was a .25 caliber pistol.
Dr. Jimmy McLeod, a surgeon and general practitioner who had treated the appellant in the past, testified for the appellant and stated that a CAT scan showed evidence of two minor strokes and that these strokes had affected the appellant's concentration ability. On cross-examination, Dr. McLeod testified that the appellant knew right from wrong and that he knew that murder was wrong. He also testified that the CAT scan showed that these strokes did not affect the reasoning portion of the brain. He also testified that the appellant required no rehabilitation treatment as a result of the strokes.
The state called Dr. Robert Allen, a neurologist, as a rebuttal witness. He testified that the small strokes would not affect the appellant's ability to think, to reason, or to make judgments.
 I.
The appellant claims the trial court erred in denying his motion to suppress his statements. He argues (1) that these statements were given before the police gave the properMiranda warning and were the product of misrepresentation by the police, and (2) that the appellant could not knowingly have waived his Miranda rights because of his mental and medical condition.
An extrajudicial statement is presumed involuntary and is inadmissible unless the state shows that the accused was informed of his rights pursuant to Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the statement was not the *Page 1016 
product of coercion, threats, or offers of reward. Starks v.State, 594 So.2d 187, 196 (Ala.Crim.App. 1991).
The appellant argues that the police officers did not immediately read him his Miranda rights before asking questions and that, therefore the post-Miranda statements were inadmissible as "fruit of the poisonous tree." (R. 94.) At the suppression hearing, Sgt. DeVane testified as follows:
 "Q [district attorney]: Would you tell the judge when you got there [appellant's house] what occurred?
 A [Sgt. DeVane]: When we got to the residence, we split up. I went to the side door, Corporal Jay went to the front door. We knocked on the door. Mr. Patterson came outside. We both identified ourselves and told him that we were here to talk with him. And he wanted to know what we was there to talk to him about. And we told him he knew. And he then nodded his head yes. We went inside the residence. We — or I begin to ask him a series of questions. I told him that I had information that he was involved in the shooting of Jerry Bennett. He denied shooting Bennett, but did admit that he had been in an argument with him earlier on the day that Mr. Bennett was killed."
(R. 12-13.)
The appellant asserts that when the officers arrived at his house, he was a suspect in the shooting, that the interrogation inside his residence was custodial in nature, and that the police were required to give a Miranda warning before asking any questions. However, there was no evidence presented that the "pre-Miranda" questions were anything other than of a general investigative nature. Before asking any potentially incriminating questions, the appellant was given his Miranda
warning, Merriweather v. State, 629 So.2d 77
(Ala.Crim.App. 1993), and signed a consent to search his house. (R. 14.) The fact that the interrogation occurred inside the accused's house is a factor tending to indicate that the interview was noncustodial. Henderson v. State, 598 So.2d 1045, 1048
(Ala.Crim.App. 1992). See also, United States v. Phillip,948 F.2d 241 (6th Cir. 1991), cert. denied, 504 U.S. 930, 112 S.Ct. 1994,118 L.Ed.2d 590 (1992) (no custody when no restraint on freedom of movement to degree associated with formal arrest); UnitedStates v. Hocking, 860 F.2d 769 (7th Cir. 1988) (no custody when interview conducted in home in polite tone and suspect not compelled to answer questions or restrained from terminating interview, despite suspect's heart condition and mature age and agent's open disbelief of suspect's denials). " 'It is the compulsive aspect of custodial interrogation, and not the strength or content of the officer's suspicions at the time the questioning was conducted, which led the Court to impose theMiranda requirements with regard to custodial questioning.'Finch v. State, 518 So.2d 864, 867 (Ala.Cr.App. 1987)." Lemleyv. State, 599 So.2d 64, 71 (Ala.Crim.App. 1992). "The Court has 'explicitly recognized that Miranda warnings are not required ". . . because the questioned person is one whom the police suspect." ' California v. Beheler, 463 U.S. [1121] at 1125, 103 S.Ct. [3517] at 3520, 77 L.Ed.2d 1275 [(1983)] (quoting Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711,714, 50 L.Ed.2d 714 (1977))." Finch v. State, 518 So.2d 864,867 (Ala.Crim.App. 1987).
The appellant also argues that his statements were prompted by a misrepresentation of the facts by the police. He claims that the police told him that a witness had seen him shoot Bennett. There was no evidence presented at trial to support this claim. It is without merit.
The appellant claims that he could not knowingly waive hisMiranda rights because of his mental and medical conditions. The appellant argues that his mental condition was impaired because he had completed only the fourth grade in school and had had two minor strokes. The appellant's expert witness, Dr. McLeod, who had treated the appellant, testified that evidence of two minor strokes had been discovered during a CAT scan. The appellant had complained of some pain and numbness as well as some problems with his concentration. Dr. McLeod testified that these complaints had been caused by a hardening of the arteries of the brain and that this hardening had resulted in these minor strokes. (R. 80-82.) Under cross-examination, *Page 1017 
Dr. McLeod testified that the appellant could understand the English language and that he could respond to questions. (R. 87-88.) He also testified that these strokes caused no material damage to the appellant's brain. (R. 86-87.) The low intelligence of a defendant does not render a statement involuntary absent a showing of coercion, threats, or promises by the police. Singleton v. Thigpen, 847 F.2d 668 (11th Cir. 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822,102 L.Ed.2d 812 (1989). " 'In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court.' " Kennedy v.State, 640 So.2d 22, 26 (Ala.Crim.App. 1993), quoting Bradleyv. State, 494 So.2d 750, 761 (Ala.Crim.App. 1985). This ruling will not be disturbed on appeal unless it is "palpably contrary to the great weight of the evidence." Parker v. State,587 So.2d 1072 (Ala.Crim.App. 1991). The trial court's denial of the appellant's motion to suppress was not contrary to the great weight of the evidence.
 II.
The appellant contends that the trial court erred in denying his motion to recall Sgt. DeVane for the purpose of admitting the Alabama Uniform Incident/Offense Report that DeVane had completed during his investigation of the murder. The state argued when the motion was made that the portions of the report used to refresh DeVane's recollection were admissible, but that all other portions of the report were inadmissible as double, and even triple, hearsay. "The circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker . . . may be shown to affect its weight but they shall not affect its admissibility." Rule 44(h), Ala.R.Civ.P.
 "This language does not mean that the maker's lack of personal knowledge concerning third-party statements made without first-hand knowledge and not pursuant to a routine business duty has no affect [sic] on the record's admissibility. Rather, it means that the maker's lack of personal knowledge of facts that a third party observed pursuant to a routine business duty and then furnished to the maker pursuant to a routine business duty and which the maker records in the record pursuant to a routine business duty, goes to the weight of the record only. While Rule 44(h) does not require the maker to have personal knowledge, statements contained in a business record must be based upon the personal knowledge of someone who had a routine business duty to obtain and transmit such knowledge in order for them to be admissible to prove the truth of the matter asserted therein. McCormick on Evidence, § 310 (2d ed. 1972)."
Reeves v. King, 534 So.2d 1107, 1110 (Ala. 1988) (emphasis original). The state concedes that this incident report was prepared by Sgt. DeVane pursuant to a routine duty. However, the witnesses he interviewed in preparing his report did not report to the police department or to Sgt. DeVane pursuant to a routine business duty. Therefore, these statements fall outside the business document exception to the hearsay rule and are inadmissible. See also Dunaway v. King, 510 So.2d 543
(Ala. 1987); Reeves. Of equal importance was the fact that these witnesses could have been subpoenaed by the appellant to testify at trial. The record shows that the portions of the incident report used to refresh Sgt. DeVane's recollection were only those portions as to which DeVane had personal knowledge — the conversation with the appellant in the appellant's home. The portions that the appellant sought to admit were statements to DeVane by witnesses concerning what they saw and, in some cases, reports from other officers concerning what other witnesses told these officers. The trial judge properly denied the appellant's motion.
 III.
The appellant claims that the trial court erred in admonishing the appellant's trial counsel in front of the jury venire. (R. 387-89.) The trial judge apparently reprimanded the appellant's counsel for being late (R. 389), but the record does not include this reprimand. The appellant made a motion for a mistrial based on this reprimand (R. 387), which the trial court denied. (R. 389.) *Page 1018 
" 'This court cannot predicate error on matters not shown by the record, nor can we presume error from a silent record.'Smelcher v. State, 520 So.2d 229 (Ala.Cr.App. 1987); Abbott v.State, 494 So.2d 789 (Ala.Cr.App. 1986)." Stegall v. State,628 So.2d 1006 (Ala.Crim.App. 1993).
We find no error in this case; therefore, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, P.J., concurring in result only.