669 So.2d 102 (1995)
Ex parte Alan D. AGEE.
(In re Alan D. AGEE
v.
Margo L. MOORE).
1940548.
Supreme Court of Alabama.
June 30, 1995.
Rehearing Denied August 18, 1995.
*103 David F. Steele and Sherrie V. McKenzie, Monroeville, for Petitioner.
J. Milton Coxwell, Jr., Monroeville, for Respondent.
BUTTS, Justice.
This Court granted Alan Agee's petition for a writ of certiorari in order to review whether the Court of Civil Appeals erred in affirming the trial court's ruling in favor of Agee's ex-wife. The trial court ruled that, pursuant to the parties' divorce agreement, Agee was required to pay his former wife, Margo Moore, the sum of $8,368.29 from the proceeds of the sale of his residence. We reverse and remand.

I.
Agee and Moore were married in June 1977. In 1979, they purchased a house in Monroeville for $33,000, incurring a mortgage indebtedness of $22,000. They divorced in September 1981. Pursuant to their divorce agreement, Moore quitclaimed her interest in the house to Agee in return for an immediate payment of $4,000 and a future payment of one-half of the following sum the net equity in the property upon its sale over the amount of $8,000 (the $4,000 payment representing her half of $8,000). After the divorce, Agee continued living in the house and made all the mortgage and tax payments. In July 1982, Agee took out a $4,000 second mortgage on the property. In May 1986, he paid off the first and second mortgages by refinancing the property with a new mortgage in the amount of $31,200. Agee eventually sold the house in August 1991 for $39,000.
In May 1992, Moore sued Agee, seeking to enforce the provision in their divorce agreement regarding the division of the net equity in the house. That provision states, in relevant part:
"1. Real Property Settlement. The wife does hereby agree to quitclaim to the husband all of her right, title and interest in and to that real estate, a description of which is attached hereto and marked Exhibit A and made as much a part hereof as if set out verbatim. The husband does agree to pay to the wife the sum of Four Thousand ($4,000.00) Dollars plus other equity as hereinafter described, for and in consideration of the wife's transfer of her right, title and interest in and to the property to the husband.
". . . .
"... Husband further agrees that upon the sale of the said property that he shall divide equally with the wife all of the net equity received from the sale of the house over and above the amount of Eight Thousand ($8,000.00) Dollars.

"The husband agrees to assume all indebtedness on the property described in Exhibit A and hold the wife harmless."
(Emphasis added.) Black's Law Dictionary (6th ed. 1990) describes "equity" in real estate as "[t]he difference between the fair market value and [the] debt in property." Thus, according to the divorce agreement, if *104 the net equity in the property upon its sale was $10,000, Agee would be required to pay Moore the sum of $1,000 ($10,000 minus $8,000 is $2,000; one-half of $2,000 is $1,000). Although the formula set out above is rather simple to apply once the net equity in the property is determined, the parties greatly dispute the amount of the net equity.
In determining net equity, the trial court did not use the mortgage indebtedness reflected by Agee's 1986 refinancing, but instead used the mortgage indebtedness as it would have existed on the original 1979 mortgage. The trial court's order stated:
"The first question presented by the parties is the meaning of the term `net equity.' This Court has determined that the term refers to the difference between the sales price of $39,000.00 on August 30, 1991, and the amount which would have been owed on the 1979 mortgage at the time of the sale of the home. The Court finds that the term net equity must have been intended by the parties to include as a factor the amount owed on the original mortgage of June 13, 1979. To hold otherwise would give the husband the continuing power to keep the value of the net equity low by simply borrowing as much money as possible whenever possible. This could not have been the intention of the parties.
"The value of the term net equity is derived by subtracting the amount of the balance due on August 30, 1991, on the original mortgage from the proceeds from the sale of the house.

"Sale price $39,000.00
Payoff (as of 8/30/91) 14,263.41
 ___________
Net Equity 24,736.59

"The amount owed by the husband to the wife is calculated by subtracting $8,000.00 from the value of the net equity and dividing it in half.

"Net equity $24,736.59
 minus 8,000.00
 __________
Amount to be divided $16,736.59
"division by 2 16,736.59/2
 =8,368.29
"Amount owed by husband $ 8,368.29

"The husband contended that he should receive credit for amounts spent to improve the residence. However, the agreement is silent as to the effect of any improvements. This Court is constrained to apply the principles of contract law to these facts and is not allowed to modify a plain agreement of the parties. This is not an action to modify a divorce decree, but rather is one to enforce an agreement made by the parties which was incorporated in the Judgment of Divorce. This Court is not allowed to remake the agreement of the parties but must try to give effect to what they intended."
On appeal to the Court of Civil Appeals, Agee argued that he had used the money obtained by the 1982 second mortgage and the 1986 refinancing to make substantial improvements to the property, which he says added to its value. He argued that the trial court had erred by allowing the improvements to increase the market value of the home, but not to increase the corresponding indebtedness on the home. The Court of Civil Appeals affirmed the ruling of the trial court. Agee v. Moore, 658 So.2d 513 (Ala. Civ.App.1994).

II.
The trial judge made his ruling following a hearing at which he heard testimony from the parties. Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994). The trial court's order is based on the trial court's interpretation of the term "net equity" in the parties' divorce agreement; the proper interpretation is a question of law. Thus, we review de novo the trial court's ruling on that issue and the judgment of the Court of Civil Appeals. *105 Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538 (Ala.1988).

III.
Although the record before us does not contain a transcript of the trial court's hearing, the parties have stipulated that during that hearing Agee testified that he had spent approximately $15,000 on improvements to the property between 1983 and 1990. Agee argues that he received a total of $16,340 in new money through his refinancing of the property and that he spent a total of $16,235 on repairs and other improvements to the property. He contends that he replaced all the carpeting, repaired the bathroom, replaced all the windows, converted the carport into an enclosed utility room, constructed a separate storage room, landscaped the front yard to improve drainage, constructed a fence around the backyard, replaced the roof, installed a new stove, and installed a new central heating and air conditioning unit. Agee contends that because the money he received when he increased the mortgage indebtedness on the property was all spent on improvements to the property, the indebtedness used in computing net equity should not be that which would have existed on the original 1979 mortgage, as the trial judge determined, but, rather, that which existed on the refinanced 1986 mortgage.
In response, Moore argues that Agee should not be allowed the benefit of the expenditures he made on the property, because, she says, they did not increase the property's value. She notes that the value of the property increased only $6,000 over 12 yearsfrom $33,000 in 1979 to $39,000 in 1991. She contends that the effect of inflation alone would have raised the value of the property by that amount and, she says, Agee should not be given credit for expenditures that had little or no positive effect on the value of the property.
The parties' divorce agreement does not specifically address the issue of the effect additional indebtedness on the property assumed by Agee after the divorce is to have on the computation of net equity. Where there is such an uncertainty or ambiguity in a contract, it is the duty of the court to construe the contract in such a way as to carry out the intentions of the parties. Walls v. Bank of Prattville, 575 So.2d 1081 (Ala.1991); Weathers v. Weathers, 508 So.2d 272 (Ala.Civ.App.1987). Moreover, the court will presume that the parties intended to make a reasonable contract rather than an unreasonable one. Industrial Machinery, Inc. v. Creative Displays, Inc., 344 So.2d 743 (Ala.1977); Weathers, supra.
It is common knowledge that the physical condition of a house will deteriorate with the passage of time just by the normal effects of weather and human activity. Thus, in order to merely maintain the condition of a house, various repairs are often required. In this case, many of the expenditures claimed by Agee are of the type intended to maintain the value of the property and are commonly made by most homeowners at some point. Without such repairs, the market value of a house will often decrease. The other expenditures claimed by Agee appear to represent actual physical improvements to the property. Although the market value of the property did not increase to the extent of the sum Agee claims to have spent on improvements, we note that many factors other than the number of physical improvements and the effect of inflation control the market value of real estate. Therefore, we cannot say that the expenditures made by Agee, which are reflected in an indebtedness greater than that which would have existed on the 1979 mortgage, did not improve the market value of the property. Moreover, there is no allegation that the $39,000 sales price for the property in 1991 was not a fair market value for the property at that time.
The trial court interpreted the property settlement provision of the parties' divorce agreement so as to not give Agee any credit for expenditures on repairs and improvements to the house. Under the facts of this case, that Agee and Moore were married only four years, that they jointly resided in the house for only two years, and that after the divorce Agee made all the mortgage and tax payments on the property for 10 years, we conclude that to place such a construction on the divorce agreement would be patently unreasonable. In Rogers v. Rogers, 490 So.2d 923 (Ala.Civ.App.1986), under facts nearly identical to those in this case, the *106 Court of Civil Appeals affirmed a trial court's ruling relating to a wife's share of the equity in the marital home that allowed the husband the value of repairs and improvements made to the property while he continued to reside there after the divorce and made the mortgage and tax payments. Although Rogers did not involve the interpretation of a provision in a divorce agreement, we take notice of the reasoning utilized in that case.
We conclude that the trial court erred in determining the net equity in the property. To determine that figure, the trial court should have utilized the indebtedness on the 1986 refinanced mortgage to the extent that it reflects expenditures for repairs and improvements to the property made by Agee. We note that the trial court was correct in its concern over the possibility that Agee, or a party to a similar contract, could decrease the net equity in the property by simply further mortgaging it, thereby increasing the indebtedness. To the extent that the proceeds of such borrowing is not utilized for repairs or improvements to the property, we conclude that that amount should not be considered as indebtedness when determining the net equity in the property.
We reverse the judgment of the Court of Civil Appeals and remand for an order or further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, and COOK, JJ., concur.
MADDOX, HOUSTON, KENNEDY, and INGRAM, JJ., dissent.
HOUSTON, Justice (dissenting).
I respectfully disagree. This is a classic case to prove the efficiency of the ore tenus presumption of correctness. The trial court has the power and capacity to examine the facts and to produce the desired effect justice between the parties. I stand by the trial court.
MADDOX and INGRAM, JJ., concur.