I dissent because I would reverse the trial court's judgment and render a judgment in favor of the wife. The trial court interpreted the marriage settlement agreement incorporated into the parties' divorce judgment in such a way as to abrogate the intent of the parties, and there was no valid accord and satisfaction.
In its judgment in this matter, the trial court quoted section 3.1 of the marriage settlement agreement between the parties, which provides:
 "The parties are the joint owners of a house and lot located at 809 Olive Street, Florence, Alabama, the `Residence', which is subject to a mortgage to the Chase Manhattan Mortgage Corporation, and an equity line of credit to AmSouth Bank. There is a pending option to purchase said property;, which option is due to be exercised on or before October 28, 2001. Assuming said option to purchase is exercised, the Wife will receive the net proceeds from the sale of the residence, estimated to be $5,700.00. If the net proceeds are less than $5,000.00, the Husband shall pay the Wife the difference between the net proceeds and $5,000.00. If the net proceeds exceed $5,000.00, the Husband shall receive credit against monthly payments due to the Wife under paragraph 7.1 herein below for all net proceeds in excess of $5,000.00.
 "If the option to purchase is not exercised, the Wife shall have the use and possession of the residence and the parties shall divide equally the monthly mortgage payment to Chase Manhattan Mortgage Corporation and the monthly payments on the equity line to AmSouth each month, beginning November 1, 2001 and until the closing of the sale of said property. Upon closing of the sale, the Wife shall receive the first $5,000.00 of the net equity and the parties shall divide equally any net equity in excess of $5,000.00. The net proceeds shall be defined as the proceeds remaining after deducting the mortgage debt, real estate commission, cost of repair (if necessary) and closing expenses."
The court then went on to find in part:
 "2. The Court has considered evidence presented and finds that said agreement presumes that a reasonable time period will apply as to the performance under the terms of the [divorce judgment] set forth above. The Court finds that more than 16 months passed from the date of the [divorce judgment] until the actual closing of the house and that during that time, the husband paid a total sum of $8,432.00 for the house in which the wife continued to live until the closing and, in fact, until her house was ready to be moved into several months later. The Court further finds that the husband exercised due diligence in attempting to get the house sold and that there was evidence which indicated that the wife, who continued to reside in the house with the husband paying one-half *Page 836 
of the payments on the house and who had relocated to Florida, did not necessarily exercise the same level of diligence in and about the sale of the house.
". . . .
 "4. The Court finds that agreements entered into between a husband and wife are not unlike other contracts entered into in Alabama. The Court will presume the parties intend to make a reasonable contract rather than an unreasonable one."
"General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists." Ryan Warranty Servs., Inc. v. Welch,694 So.2d 1271, 1273 (Ala. 1997). The intent of the contracting parties is to be determined by considering the contract as a whole, not by focusing on just one provision. Lewis v. Oakley,847 So.2d 307 (Ala. 2002); Homes of Legend, Inc. v. McCollough,776 So.2d 741 (Ala. 2000).
By applying the presumption that the parties intended a reasonable time period to apply to the provisions of the marriage settlement agreement, the court fundamentally changed the contract, interpreting it contrary to the intent of the contracting parties. Moreover, the trial court misapplied the law to the facts.
 "Although the ore tenus presumption applies to the trial court's findings of fact, no such presumption adheres to the trial court's application of the law to those facts. Ex parte Agee, 669 So.2d 102, 104
(Ala. 1995). The husband's arguments are based upon the interpretation of certain provisions and terms in the parties' [marriage settlement] agreement; such interpretations, like the interpretation of unambiguous contracts, are questions of law. See Agee, 669 So.2d at 105; Stacey v. Saunders, 437 So.2d 1230, 1233 (Ala. 1983)."
Laney v. Laney, 833 So.2d 644, 646 (Ala.Civ.App. 2002).
The amount of time that the provisions of section 3.1 of the marriage settlement agreement could have been operative is irrelevant. That section takes into account the existence of an option to purchase the marital residence held by the University of North Alabama. The marriage settlement agreement contemplates the exercise of this option, but it also contemplates the possibility that the option might not be exercised. Depending on whether the option was exercised, the net proceeds from the sale of the marital residence would be divided in different ways.
Ultimately the option was not exercised. However, if the option had been exercised on or before October, 28, 2001, and the house had been bought for the listed price of $103,900, the husband would have received a credit towards his property-division obligation under section 7.1 of the marriage settlement agreement of only $3,212.48. The husband would still have paid $899.23 — half of the payments owed on the debt on the residence for one month. The total debt remaining on the residence would have been $89,414.52 — $65,262.91 due on the first mortgage and $24,151.61 due on the equity line of credit. Additionally, there would have been a lawyer's fee of $39 and commission of $6,234. There would have been net proceeds of $8,212.48. The wife would have received the first $5,000 of the net proceeds, and the husband would have received a credit of $3,212.48 towards his obligation under section 7.1 of the marriage settlement agreement.
However, the option was not exercised. Instead, it took 16 months to sell the house. The provisions of section 3.1 of the marriage settlement agreement are still reasonable, even without explicitly providing a time period during which those provisions *Page 837 
would be applicable. The marriage settlement agreement provides that the wife "shall have the use and possession of the residence and the parties shall divide equally the monthly mortgage payment[s] . . . until the closing of the sale of said property." The period of time it took to reach the closing of the sale is immaterial because, at the closing, the mortgage debt on the residence would be satisfied, regardless of when the house sold. The marriage settlement agreement takes this fact into consideration by defining net proceeds as "the proceeds remaining after deducting the mortgage debt, real estate commission, cost of repair (if necessary) and closing expenses." Additionally, the marriage settlement agreement provides for disposition of the net proceeds whether or not the option was exercised.
The husband seems to believe, and the trial court must have agreed, that he is entitled to a credit for his payment of half of the debt payments made during the 16-month period it took to sell the house against his $8,750 obligation under section 7.1 of the marriage settlement agreement. However, the husband admitted that those payments were made pursuant to the agreement.
 "Q. [Wife's counsel:] These are simply payments that were made as you were ordered to do under the terms of the agreement, right?
"A. Yes."
The trial court does not say what a reasonable time period to apply the provisions of section 3.1 of the agreement would have been. Even so, it failed to take into account the plain language of the agreement or the effects that the language in each provision of the agreement would have on the agreement as a whole. See Laney v. Laney, supra. If the house had been sold on October 29, 2001, one day after the option had expired (presumably a reasonable period of time), and the parties had received the full list price of $103,900, then, pursuant to section 3.1 of the agreement, the husband would have been entitled to only $1,606.24. After paying the costs, the mortgage debts, and the real estate commission, there would have been $8,212.48 in net proceeds. Instead of a credit of any amount over $5,000, the husband would have received only half of the net proceeds in excess of $5,000. The net proceeds in excess of $5,000 would have been $3,212.48; thus, the husband would have been entitled to $1,606.24, half of that amount.
If the house had been sold for the listed price of $103,900 on March 9, 2002, roughly six months after the divorce, the husband would have received $3,979.36 as his share of the net proceeds. If this had been the case, the husband would have been required to pay, pursuant to section 3.1 of the marriage settlement agreement, a total of $2,214.36 on the mortgage and a total of $900 on the equity line of credit. The total debt on the residence would have been $84,668.28, the real estate commission would have been $6,234, and the lawyer's fee would have been $39. The net proceeds would have been $12,958.72. The wife would have received the first $5,000, and the remaining $7,958.72 would have been split between the parties.
It is interesting to note that if the house had sold on March 9, 2002, for $92,000, the price for which it sold on January 27, 2003, the husband would have received substantially less than the amount calculated in the previous paragraph. After subtracting the mortgage debt, the real estate commission, and fees, the net proceeds would have been $1,772.72. Under the marriage settlement agreement, the wife would have received all of those net proceeds.
In light of the foregoing discussion and considering the marriage settlement *Page 838 
agreement as a whole, the trial court's finding that the husband should be credited with $8,342 because the trial court found that a reasonable time period applied to how long the provisions of section 3.1 of the agreement should be operative is wrong.
The trial court also erred when it found that there was an accord and satisfaction between the husband and the wife. Section7-3-311, Ala. Code 1975, entitled "Accord and satisfaction by the use of instrument," provides in part:
 "(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply."
Section 7-3-103(a)(4), Ala. Code 1975, defines "good faith" as "honesty in fact in the conduct or transaction concerned."
The husband did not satisfy the threshold requirements for an accord and satisfaction. The claim is neither unliquidated, nor is there a bona fide dispute. The husband's obligation, pursuant to section 7.1 of the marriage settlement agreement, is
 "to [pay] the Wife the sum of $8,750, in 22.72 monthly payments of $385.00 each over a term not to exceed 28 months. Payments shall begin on the first day of the month following the closing of the sale of the marital residence."
The claim is liquidated. "A liquidated demand in this connection is said to exist when `the amount due has been ascertained and agreed upon by the parties.'" Wilson v. Monette, 224 Ala. 106,109, 139 So. 264, 266 (1932) (quoting 1 C.J., Accord Satisfaction § 75 (1914)).
 "The payment of an amount less than that for which the debtor is liable does not constitute a valid accord and satisfaction, unless there is a bona fide dispute or controversy as to the amount due by the debtor. 1 Corpus Juris, p. 554, § 74. While it is not necessary that the dispute should be well founded, it is necessary that it be in good faith. Without an honest dispute, an agreement to take a less amount in payment of a liquidated claim is without consideration and void. A dispute cannot be raised for the mere purpose of extorting money. 1 C.J. p. 554, § 75. A person cannot create a dispute sufficient as a consideration for a compromise by a mere refusal to pay an undisputed claim. That would be extortion and not compromise. There must be a dispute or doubt as to the right of the parties honestly entertained. De Mars v. Musser-Sauntry Land Co., 37 Minn. 418, 35 N.W. 1 [(1887)]. There must, in fact, be a dispute, an honest disagreement, and the amount of the account fairly in dispute."
Southern Cotton Oil Co. v. Currie, 20 Ala.App. 1, 2,102 So. 149, 150 (1922), cert. denied, 207 Ala. 704, 93 So. 662 (1922). The reason why there must be a bona fide dispute as to the amount due in such cases is that without some concession there would be no valid consideration for the agreement for satisfaction. Exparte Southern Cotton Oil Co., supra.
Here, there was no bona fide dispute. Section 7.1 of the marriage settlement agreement lays out that the payments under 7.1 are to begin on the first day of the month after the closing of the sale of the marital residence. The obligations under section 3.1 are to be in effect until the closing date of the sale. The property-settlement amount to be paid is fixed. The duration of the obligation is certain. Although the husband marked the check *Page 839 
"property settlement-payment in full" and the wife cashed the check, there was no satisfaction. Without a bona fide dispute, there was no consideration for the accord, and thus no subsequent satisfaction. See Ex parte Southern Cotton, supra.
Because there was no consideration, there is no valid accord and satisfaction. See Ex parte Meztista, 845 So.2d 795 (Ala. 2001). The majority opinion relies heavily on Ex parteMeztista. Meztista and Hylton were partners in an advertising business that was winding up its affairs. The partners had agreed to split the profits and liabilities. Meztista informed Hylton that her share was $17,617.84. Hylton disputed that amount, but was not given the opportunity to review the partnership's books. Although Meztista did not tender an explanation, he did tender to Hylton a check for $17,617.84, which was marked as "payment in full." Hylton cashed the check. The supreme court held:
 "`[A] party in Hylton's position has two options: (1) reject the offer of the check as full satisfaction of the disputed claim; or (2) accept the offer of the check as a full satisfaction by cashing or depositing the check. Public Nat'l Life Ins. Co. v. Highsmith, 47 Ala.App. 488, 256 So.2d 912 (Ala.Civ.App. 1971). The supreme court has held that a party in Hylton's position does not have the option of accepting the offer of the check and placing a restrictive endorsement on it. Boohaker v. Trott, 274 Ala. 12, 16, 145 So.2d 179, 183 (1962).'"
Ex parte Meztista, 845 So.2d 797` (quoting Hylton v. Meztista,845 So.2d 792, 795 (Ala.Civ.App. 2000) (Crawley, J., dissenting)).
The majority opinion quotes the above language from Meztista, substituting "[the wife's] position" for "Hylton's position." Hylton's position — i.e., the dispute in Ex parte Meztista — involved an unliquidated debt. Hylton had the absolute right to examine the partnership books and she disputed the amount that she was owed. When she cashed the check that was tendered as payment in full, she accepted the offer as a full satisfaction of her claim. The consideration was her waiving the right to examine the partnership books and to force an accounting. She surrendered those rights when she accepted the offer of the check as payment in full by cashing the check.
Here, the husband tendered to the wife a check for $840 marked "property settlement-payment in full." The wife cashed the check, and, had the debt been unliquidated or the dispute bona fide, then her cashing the check would have been a satisfaction. However, the wife was entitled to "the sum of $8,750, in 22.72 monthly payments of $385.00 each over a term not to exceed 28 months." The wife was not in the same position as Hylton. The wife had litigated and had settled her claim. The marriage settlement agreement was incorporated into the divorce judgment. The debt was liquidated. There was no consideration to support a satisfaction because the dispute was not bona fide. The wife gave up nothing, and there was, therefore, no consideration.
The husband also sent a letter indicating that he was discounting $7,910 from the $8,750 he owed the wife under section 7.1 of the marriage settlement agreement because he had paid the mortgage payments for several months longer than he had anticipated. In the letter, the husband states:
 "I trust neither you nor I would have signed the mediation agreement knowing what we know now. I know I would not have agreed, especially with [the University of North Alabama] pulling out of our deal the way they did. It was never intended for you to have your *Page 840 
living expenses lessened for well over a year by my income, and still expect the full benefit of the document concerning the property settlement as if the 15 months had not transpired."
In fact, the marriage settlement agreement contemplated just the situation that the husband refers to in his letter. The marriage settlement agreement contemplated that the option might not be exercised. Section 3.1 of the marriage settlement agreement specifically outlines how the net proceeds from the sale of the house will be distributed if the option is exercised, but it also contains provisions for how the net proceeds will be divided if the option is not exercised. The provisions of the marriage settlement agreement are in direct conflict with the husband's assertions in his letter. The marriage settlement agreement provides "[i]f the option to purchase is not exercised, the Wife shall have the use and possession of the residence and the parties shall divide equally the monthly mortgage payment[s]." "A dispute cannot be raised for the mere purpose of extorting money," and "[a] person cannot create a dispute sufficient as consideration for a compromise by a mere refusal to pay an undisputed claim. That would be extortion, and not compromise."Southern Cotton Oil Co. v. Currie, 20 Ala.App. at 2,102 So. at 150.
The trial court interpreted the marriage settlement agreement in a way that is contrary to the plain language of the agreement and in a manner that abrogated the intent of the parties, and the trial court did not consider the document as a whole. Additionally, the husband failed to establish that his offer of an accord was made in good faith or that the dispute was bona fide. I would reverse the trial court's judgment and render a judgment for the wife granting her petition to hold the husband in contempt, ordering the husband to make payments pursuant to section 7.1 of the marriage settlement agreement, plus interest on all payments past due, and awarding the wife an attorney fee in the amount of $1,000.
PITTMAN, J., concurs.