BASCHAB, Presiding Judge.
The appellee, Quinon Demon Freeman, was indicted for first-degree unlawful possession of marijuana, a violation of § 13A-12 — 213(a)(1), Ala.Code 1975. On December 6, 2006, he filed a motion to suppress evidence law enforcement officers seized from his person. After conducting a hearing, the trial court granted the appellee’s motion to suppress. This appeal followed.
The State argues that the trial court erroneously granted the appellee’s motion to suppress evidence law enforcement officers seized from his pocket. Specifically, it contends that the appellee gave officers general consent to search his person and that his consent included a search of his pockets.
During the suppression hearing, Officer Drew Harless of the Florence Police Department testified that, on September 24, 2006, he received a call from dispatch regarding shots being fired from a motel; that dispatch advised him that the shots may have come from the third floor; and that he, Officer Kevin Jackson, and Sergeant Robert Richey responded to the call. He also testified that, after they arrived, he and the other officers started up the stairs; that, as they were going from the first floor to the second floor, they saw the appellee coming down the stairs; that Jackson stopped the appellee; that he was the last officer going up the stairs; and that Jackson sent the appellee down to him.
Harless testified that he detained the appellee to see if he had any weapons; that he asked the appellee if he had heard any gunshots, and the appellee said that he had not; that he asked the appellee if he could search his pockets, and the appellee said he could; and that he found nine small plastic baggies containing a green, leafy substance in the appellee’s right front pants pocket. He also testified that he was detaining the appellee for the officers’ safety and well-being; that he intended to pat down the appellee to see if he had any weapons; that he was only concerned about a weapon; that he asked for consent to search the appellee’s pockets so he could be one hundred percent sure that he did not have a weapon; and that, when he asked for consent to search the appel-lee’s pockets, he just asked for permission to search his pockets, and he did not specify that he was searching for weapons or anything else. Finally, he testified that, if the appellee had refused to give him consent to search his pockets, he would not have gone into his pockets.
The appellee testified that, on the day in question, he was leaving the fourth floor of the motel; that, as he was going down the stairs, the law enforcement officers were coming up the stairs; that the first officer detained him and passed him to Harless; that Harless asked him if he could search him for weapons; that Harless did not ask him if he could search his pockets; that Harless said that they had heard gunshots; and that he thought Harless was more concerned about a pistol.
In its order granting the motion to suppress, the trial court found as follows:
“This cause came before the Court on the defendant’s motion to suppress the marihuana found on the defendant’s person as the fruit of an illegal search. The Court took testimony and received briefs. The evidence presented at the suppression hearing indicated the following:
“Late in the evening of September 24, 2006 the Florence Police Department was notified of a report that there had been a gunshot fired at the City Lodge *716 in downtown Florence, possibly from the third floor. Officers Drew Harless, Kevin Jackson and Robert Richey responded and began to ascend the outside stairs toward the third floor. Between the first and the second floor they encountered this defendant, Quinon Freeman, descending the same stairs. The officers asked if he had heard gunshots and Mr. Freeman answered that he had not. There was no evidence that Mr. Freeman was acting in a suspicious manner. Nevertheless the defendant was stopped and Officer Harless requested permission to search. The defendant readily consented and Officer Harless found nine small plastic bags of marihuana in his front right pants pocket. Officer Harless subjectively believed he had permission for an unrestricted search of the defendant’s person. Mr. Freeman subjectively believed he had given permission for a limited search for weapons only.
“The testimony of Officer Harless was unequivocal on one point: The officers had no reasonable suspicion that Mr. Freeman had committed any illegal activity and they did not have probable cause to search his pockets. The stop of Mr. Freeman by law enforcement was nevertheless justified because he could potentially implicate others in criminal activity. Police officers coming upon the scene of a recently committed crime may lawfully freeze the situation and obtain identifications and an account of the circumstances from the persons present. Such an encounter does not, however, justify a search of the pockets of the potential witness. Here the State relies on the defendant’s consent to justify the search.
“The officers asked Mr. Freeman if he had heard gunshots. He said he had not. They asked if they could search him. He said they could. The conversation was evidently no more extensive than that. Therefore the question is how extensive a search did Mr. Freeman consent to? It is clear that the officers were responding to a call concerning gunshots and there was no indication that anyone was suspected of possession of drugs. In Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), concerning the permissible scope of a search in response to consent, the Court opted for a standard of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the subject? Here the defendant was asked about gunshots and then was requested to consent to a search. Reason and common sense leads this Court to conclude that the officers were interested in searching for weapons, the defendant understood the officers were interested in searching for weapons, he consented to a search for weapons and the scope of the search is limited to a search for weapons. The search of Mr. Freeman’s pockets cannot be justified on probable cause and exigent circumstances and was beyond the scope of the consent obtained. It was, therefore, illegal and the evidence seized is due to be suppressed.”
(C.R. 36-38.)
In State v. Hill, 690 So.2d 1201, 1203-04 (Ala.1996), the supreme court stated the following with regard to standards of review to be applied when reviewing a trial court’s ruling on a motion to suppress:
“As a preliminary matter, we note that there has been some debate regarding the applicable standard of appellate review. In its unpublished memorandum, the Court of Criminal Appeals showed great deference to the trial court’s decision to suppress the evidence of the cocaine and marijuana. It stated: *717 “ ‘[A] trial court’s ruling on a motion to suppress will not be disturbed unless it is “palpably contrary to the weight of the evidence.” Patterson v. State, 659 So.2d 1014 (Ala.Cr.App.1995). The trial court is in a far better [sic] than this court to rule on the merits of a motion to suppress. Sullivan v. State, 23 Ala.App. 464, 127 So. 256 (1930). The trial court’s ruling [on] the motion to suppress was not palpably wrong.’
“The State contends that the deference of the Court of Criminal Appeals to the judgment of the trial court was unwarranted. It claims that an appellate court should review de novo the trial court’s finding that ‘reasonable suspicion’ was lacking, because the facts in the case are not in dispute. We agree.
“The trial judge made his ruling following a hearing at which he heard oral testimony only from Officer Bailey. We stated in Ex parte Agee, 669 So.2d 102 (Ala.1995):
“ “Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of comctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).’
“669 So.2d at 104. ‘Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted). The trial judge’s ruling in this case was based upon his interpretation of the term ‘reasonable suspicion’ as applied to an undisputed set of facts; the proper interpretation is a question of law.
“Hill counters with the argument that some facts are disputed, and he argues that the judge’s assessment of credibility was a key factor in his decision to suppress. It is true that, absent clear error, the trial court’s credibility choices on issues of fact at suppression hearings are binding on this Court. Powell v. State, 624 So.2d 220 (Ala.Cr.App.1993). However, Hill has not indicated what facts are in dispute. He presented no evidence at the hearing, and there was no evidence that conflicts with or tends to undermine the testimony given by Bailey. Hill also adopted the statement of facts as set out in the State’s brief, under Rule 39(k), Ala. R.App. P., adding only that the car was actually owned by Hill’s brother and that when it appeared that Heard might attempt to flee Bailey told Heard that he had a police dog in his vehicle, although Bailey had no such dog. But these two facts are not relevant to the question whether the officer had a ‘reasonable suspicion’ at the time he stopped the car. Thus, we review de novo the trial court’s ruling on the issue and the judgment of the Court of Criminal Appeals. Ex parte Agee, supra.”
(Emphasis added.)
“ ‘The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of “objective” reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?’ Florida v. Jimeno, 500 *718 U.S. 248, 250, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991).”
Bender v. State, 687 So.2d 219, 221 (Ala.Crim.App.1996).
Applying the objective reasonableness standard set forth in Jimeno, the trial court found that the officers were interested in weapons, that the appellee understood that he was consenting to a search for weapons, and that the scope of the search was limited to a search for weapons. However, the testimony at the suppression hearing did not indicate that Harless asked the appellee if he could pat him down or frisk him. Rather, the undisputed testimony at the suppression hearing indicated that Harless asked the appellee if he could search him. A typical, reasonable person would have understood that a search for weapons could include a search of the pockets. Further, Harless testified that he was only concerned about a weapon and that he searched the appellee’s pockets so he could be one hundred percent certain that the appellee did not have a weapon. Therefore, Harless’ search did not exceed the scope of the appellee’s consent, and the trial court erred when it granted the appellee’s motion to suppress the evidence Harless seized from his pocket. Accordingly, we reverse the trial court’s judgment and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.