256 So.2d 912

**PUBLIC NATIONAL LIFE INSURANCE COMPANY**

**v.**

**J. H. HIGHSMITH, d/b/a Highsmith Funeral Home.**

**6 Div. 102.**

Court of Civil Appeals of Alabama.

Dec. 29, 1971.

Don B. Long, Jr., Birmingham, for appellant.

Jerry F. Guyton, Winfield, for appellee.

BRADLEY, Judge.

Appellee, J. H. Highsmith, d/b/a Highsmith Funeral Home, filed a one count complaint in the Circuit Court of Marion County on May 29, 1970 against appellant, Public National Life Insurance Company, alleging a breach of contract. The contract was attached to and incorporated with the complaint by reference.

Appellant's demurrer was overruled, and it pled in short by consent with leave, etc.

On October 12, 1970 the case was tried by the court sitting without a jury. On November 4, 1970 the court rendered a judgment for appellee in the amount of $300.00 and this appeal arises from that judgment.

The evidence showed that appellee owned and operated a funeral home in Russellville, Alabama. On September 29, 1954 he entered into an agreement with Fidelity Service Insurance Company requiring him to service burial policies sold by Fidelity. The agreement required appellee to furnish certain services and materials for which Fidelity was required to pay appellee according to a schedule of payments set out in the contract.

In paragraph 3(k) of said contract the following is found:

"... It is understood and agreed by the parties hereto that at the end of each 12 month period during the life of this contract, the remuneration payable to the Funeral Director by the Insurance Company shall be increased or decreased for the ensuing 12 month period by whatever increase or decrease exists in the cost of the merchandise to the Insurance Company or its funeral home at the time of making such adjustments in the remuneration to be paid the Funeral Director by the Insurance Company."

Said contract also provided that the parties and "their successors or assigns including any successor by merger, purchase or otherwise" would be bound by the terms of said agreement.

United Security Life Insurance Company purchased all of the stock of Fidelity, and, on December 28, 1962, dissolved it.

Appellant's only witness, its assistant vice-president, testified that appellant succeeded to United Security's business by purchase and assumed its claims.

Appellee claimed that over the years since 1954 the cost of merchandise had increased by $16.00 per funeral and that the appellant, even though required by the agreement to do so, had failed to increase

its remuneration to appellee by this amount.

Appellee's evidence tended to show that appellant was a successor to Fidelity and had assumed the 1954 agreement, that the cost of, merchandise had increased, and that the appellant had been notified of this increase. In support of this evidence, appellee also put into evidence a list of policies (Exhibit D) that it had serviced for appellant.

The testimony also showed that appellant had received a letter from the Alabama Funeral Directors Association in the fall of 1969 in which the Directors advised appellant of the increased costs of the merchandise used to service its insurance contracts.

However, it was also shown that appellant sent a letter to all funeral directors setting out a schedule of increased benefits to be effective January 1, 1970. Subsequent to this letter, a second letter was mailed out increasing the benefits even more, but not as much as proclaimed necessary by the funeral directors in their letter.

There was evidence that appellant was paying more to appellee for caskets than what appellee could purchase caskets for from two firms in the casket making business. But, it was also shown that appellant required appellee to use caskets of comparable quality to those used by Liberty National Insurance Company. Apparently the quality of the caskets used by Liberty National was higher than that of the ones sold by the cheaper firms.

The evidence reflected that checks had been given to appellee and cashed by appellee for services rendered pursuant to the agreement in question which contained thereon these words: "Settlement of Claim Liability of United Security Life Insurance Company under terms of Policy No.—— (here was placed the appropriate number) as detailed on voucher attached." The evidence was undisputed that appellee indorsed and negotiated these checks.

■ Appellant made ten assignments of error. Assignments three and nine were not argued and are deemed waived. Rule 9, Supreme Court Rules.

Assignments of error one and six question the ruling on the demurrer and will be considered together.

■■ There were nineteen grounds of demurrer and since a demurrer is an entity, should any one of the grounds be good, then the demurrer is good. Prather v. Ray, 258 Ala. 106, 61 So.2d 46. Furthermore, if any of the grounds of demurrer are not argued in brief, then those, like unargued assignments of error, are deemed to have been waived. Air Engineers, Inc. v. Reese, 283 Ala. 355, 217 So.2d 66.

■ Grounds of demurrer one, two, seventeen and eighteen state, in essence, that the complaint alleged no breach of contract, or that it was alleged with uncertainty, or that the allegation is a mere conclusion of the pleader, or that there was a failure to allege the particulars showing wherein the breach occurred.

We do not believe these grounds have any merit.

The complaint contains an averment of that part of the contract which requires appellant to increase appellee's remuneration where appellee's costs have increased, and the complaint contains an averment that appellant has not increased appellee's remuneration.

We think this is an adequate allegation of a breach of contract for it was said in Woodward Iron Co. v. Frazier, 190 Ala. 305, 67 So. 430, that:

"While no great particularity is required as to describing the breach of the contract, the essential facts constituting the breach should be set forth in unequivocal terms, and the breach should be assigned with such certainty and particularity as will apprise the defendant in what particular he has failed to perform. All that is required is that the breach com-

plained of be substantially set forth and substantially proved."

■ Grounds four, nine, ten and twelve question the complaint on the basis that no promise by appellant is shown nor that appellant was a party to or had assumed the contract.

The complaint averred that appellant was a successor company to Fidelity Service Insurance Company. Also, the contract, in its entirety, was incorporated in and made a part of the complaint. Paragraph seven of said contract specifically provided that its provisions were to be binding on successors to said contract. We consider these grounds not to be meritorious. Air Engineers, Inc. v. Reese, supra.

■ Demurrant, in grounds five, six, eleven, thirteen, fourteen and fifteen, contended that the complaint did not allege that appellee had performed, had tendered performance, or was ready, willing and able to perform.

In Floyd v. Pugh, 201 Ala. 29, 77 So. 323, the Supreme Court said:

"The fulfillment of the condition precedent by plaintiff must be averred to show the liability of defendants consequent upon such discharge by him of his part of the agreement. [Citations omitted.]"

See also Otinger v. Water Works and Sanitary Sewer Board, 278 Ala. 213, 177 So.2d 320.

It is clear from the contract attached to the complaint that before appellant was due to pay appellee for his services, appellee must first perform those services, and this performance by appellee must be alleged. Duffey v. Southern Mfg. Company, 207 Ala. 369, 92 So. 545. In the case at bar there was no allegation of performance by appellee or that appellee stood ready, willing and able to perform. The failure of the complaint to allege performance by

appellee made it defective and subject to proper demurrer. The trial court erred in overruling the demurrer in this regard.

■ Ground three of the demurrer is premised on the contention that the complaint fails to aver the time of the breach.

The contract, which is the basis of this action, provides in Section 3(k) that the funeral director is to receive remuneration for the cost of merchandise used based on the cost as of the date of the contract, which was September 29, 1954. The cost of merchandise for which the funeral director was to receive pay would be adjusted, according to the contract, every twelve months to take care of any increase or decrease in the merchandise cost.

In other words, the funeral director would receive as remuneration for the cost of merchandise what that cost was on the date of the contract. This remuneration would continue on that basis for twelve months. At the end of twelve months, and every twelve months thereafter for the life of the contract, which was fifteen years, the remuneration to the funeral director for the cost of the merchandise would be adjusted to meet the costs for the past twelve month period. The adjusted costs would affect the costs for the next ensuing twelve month period.

The complaint was filed after the completion of the contract and claimed increased costs over the life of the contract, not for some twelve month period for which there had been no adjustment or where a dispute in the amount of the adjustment had arisen, but for the fifteen periods of the contract.

The question is, can the funeral director claim an increase in costs over the life of the contract, or is he limited to claiming such cost adjustments for each twelve month period?

If he can claim for the entire contract life, no statement is necessary in the complaint as to time of breach.

The provisions of the contract indicate that the insurance company is required to increase or decrease the amount paid the funeral director for the cost of merchandise every twelve months so long as the contract is enforceable. Consequently, it would appear that the funeral director would be required, in some fashion, to apprise the insurance company of the increase in cost, either by way of claim for the additional amount or notice of the increase in cost and an opportunity to discuss the amount to be adjusted.

A reasonable inference to be obtained from the above mentioned provision of the contract, would be that if no additional amount is claimed or the insurance company is not informed of an increase in cost, the insurance company would continue to pay what it was required to pay at the beginning of the contract. In other words, no adjustment would be required for the twelve month period in which no increase or decrease in cost is claimed.

If no adjustment in remuneration is made by the insurance company, are we then to conclude that no question can later be raised about the costs for that period? This would seem to be a reasonable conclusion because the terms of the contract specifically provide for re-analysis every twelve months and the adjustment, if any, is to govern for the next ensuing twelve month period.

For aught that appears from the complaint, no adjustment was made in the cost of the merchandise over the life of the contract and none was requested or claimed. There being no increase in the cost of merchandise requested by the funeral director, the insurance company would be required to pay only what it was paying for the cost of merchandise at the signing of the contract.

There being no period alleged in the complaint for which there was no adjustment made after request, could it be said that the contract had been breached in the aspect under discussion? We think not.

Assignment of error two questions the overruling by the trial court of objections made to the introduction into evidence of appellee's Exhibit "D". Exhibit "D" was a statement describing the burial policies appellee had serviced for appellant for the period beginning January 1, 1967 and ending on January 8, 1970. The statement was prepared by appellee from the original records of his funeral home. The original records were not produced at the trial. The objection to the introduction of Exhibit "D" was that it was not the best evidence of what it purported to represent. The objection was overruled and the exhibit went into evidence.

The following from McCormick's Hornbook on Evidence, p. 409 (1954), is a good explanation of the "best evidence rule":

". . . The only actual rule that the 'best evidence' phrase denotes today is the rule requiring the production of the original writing.

"196. ORIGINAL DOCUMENT RULE.

"The specific tenor of this requirement needs to be definitely stated and its limits be clearly understood. The rule is this: in proving the terms of a writing, where such terms are material, the original writing must be produced, unless it is shown to be unavailable for some reason other than the serious fault of the proponent . . . ."

Alabama courts have recognized that it is not always practicable to produce the original document, and they have allowed secondary evidence to show the contents of the original.

The Supreme Court said in Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216, that:

"The admissibility of secondary evidence is generally left to a sound discretion by the court, when the absence of the primary evidence is established and accounted for, within the rule having application to such evidence. . . ."

It was also said in Sovereign Camp, W. O. W. v. Hoomes, 219 Ala. 560, 122 So. 686, that before secondary proof will be allowed, a proper predicate must be laid.

In the case at bar there was no effort to introduce the originals nor account for their absence.

The Supreme Court in Booker v. Benson Hardware Co., 216 Ala. 398, 113 So. 256, said, in construing Title 7, Sections 414 and 415, Code of Alabama 1940, as Recompiled 1958, which Code sections permit the introduction into evidence of books of account and like writings under certain circumstances:

"  .  .  .   the statute admits books of original entry, not mere transcripts therefrom  .  .  ."

We do not think there is any question but that Exhibit "D" was a "mere transcript" from the books of original entry maintained by appellee and which were not introduced into evidence nor was their absence properly accounted for by appellee. Furthermore, no proper predicate was laid for the introduction of the secondary evidence—Exhibit "D"—in lieu of the original records. Under these circumstances, the admission into evidence of Exhibit "D" was in error.

■■ Assignments of error four, five and seven contend that the trial court erred in awarding damages in the amount of $300.00 to the appellee because there was an accord and satisfaction. The contention as to an accord and satisfaction relates only to the funerals serviced by appellee for the insureds Susan Isom, W. J. Price, A. P. Wilson and Clara Murray.

A check, dated March 10, 1969, was given by United Security Life Insurance Company, to appellee for servicing policy No. 1079074 insuring Susan Isom; a check dated May 12, 1969 was given by United Security for servicing policies No. 48697 and 170292 insuring W. J. Price; a check

dated August 11, 1969 was given by United Security for servicing policy No. A3MS-65275, insuring A. P. Wilson; and a check dated February 10, 1970 was given by appellant Public National Life Insurance Company for servicing policy No. 1111637, insuring Clara Murray.

The checks issued by United Security bear the legend "In settlement of liability of United Security Life Insurance Company under terms of policy no. [listing policy numbers] as detailed on attached voucher." The Public National check bore the same legend as the United Security checks except for the naming of Public National in place of United Security.

The amounts of the checks were in keeping with the amounts contained in price schedules issued by United Security and Public National.

Each of the checks was indorsed by and deposited to the account of appellee.

The evidence shows that there was a bona fide dispute between appellant and appellee concerning the amount of money appellee was to receive for the cost of merchandise used in servicing funerals insured by United Security and appellant. Appellee submitted invoices to appellant showing the cost of merchandise used in the funerals serviced by him to be greater than what appellant paid appellee for the merchandise according to its price schedules.

The lesser amount tendered appellee by appellant was accepted by appellee when he indorsed the checks and deposited them to his account at his bank.

The question raised by the assignments of error is whether or not the acceptance by appellee of the four checks mentioned above, bearing the legend that the amount of the check was in full settlement of the liability of the insurance company for the policy serviced by appellee amounted to an accord and satisfaction of the disputed amount claimed.

The Supreme Court, in Hand Lumber Co. v. Hall, 147 Ala. 561, 41 So. 78, said:

" . . . 'When a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed in satisfaction operates as an accord and satisfaction,'

. . .

" . . . 'While a mere tender, though of the whole amount due, when unaccepted, does not operate to extinguish or satisfy the claim, yet when made in full of the amount due and accepted, without protest as to its sufficiency, the debt becomes extinguished. The creditor may reject a tender on condition that he receive it in full of his claim; but, if he accept it, he is bound by the condition, and will not be allowed to keep the money and repudiate the condition'
. . . ."

See also Brackin v. Owens Horse and Mule Co., 195 Ala. 579, 71 So. 97; Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662; and Boohaker v. Trott, 274 Ala. 12, 145 So.2d 179.

The following rule is found in 1 R.C.L. 196:

" . . . when a check is sent upon the condition that it be accepted in full payment of a disputed claim, there is, as a general rule, but one of two courses open to the creditor—either to decline the offer and return the check, or accept it with the condition attached. The moment the creditor indorses and collects the check, knowing it was offered only upon condition, he thereby agrees to the condition, and is estopped from denying such agreement . . . ."

In the case at bar there was a clear dispute as to the cost of merchandise for which appellee was to be remunerated. Appellant tendered appellee a lesser amount than was claimed by appellee for four of the funerals, and appellee accepted the lesser amount for these four funerals.

As stated above, where the amount claimed is in dispute and a lesser amount is tendered than claimed, with the condition attached that the amount offered is in full settlement of the disputed amount, the creditor has two courses open: (1) reject the tender or (2) accept the tender with the condition attached.

In the present case the appellee did not reject the tender on the basis that it was not in the claimed amount, but instead accepted the tender with the condition attached by indorsing and depositing the checks to his account in his bank.

Such a course of conduct meets all the requirements of an accord and satisfaction.

The verdict and judgment assessing damages in the amount of $300.00 against appellant is in error, for they included amounts for which there had been an accord and satisfaction.

Appellant's assignment of error ten asserts that the judgment of the trial court is invalid for the reason that appellee failed to prove that he had given notice to appellant of an increase in cost of the merchandise used in servicing the burial policies.

At the trial of this case there were ten burial policies, which had been serviced by appellee during the period January 1, 1967 through January 8, 1970, for which an increase in cost of merchandise was being sought.

The evidence showed that the only notice of an increase in cost of merchandise was given to appellant by the Alabama Funeral Directors Association. Appellee was a member of said association. The notice to appellant was dated December 15, 1969.

Furthermore, all of the burial policies, except one, which were the subject of this controversy, were serviced prior to the date of this notice.

Appellant contended that it was not in the business of buying merchandise to be used in funerals but that appellee was and should know best of all what such merchandise cost. Appellee countered by say-

ing that appellant was in the business of selling burial insurance and should be aware of the costs of such merchandise.

Section 3(k) of the contract in question, and which section has heretofore been discussed in connection with the ruling on the demurrer, specifically provides that the adjustment in the remuneration to the funeral director shall result from the increase in cost of merchandise to the funeral director.

It appears without question to place a duty on the funeral director to inform the insurance company of the increase in the cost of the merchandise to said director. How else would the insurance company know of the cost of merchandise and whether it had decreased or increased?

It might be argued that the insurance company could inquire of the various manufacturers what their costs were for this type merchandise. But such answers might not reflect accurately what price one funeral director is receiving as opposed to another funeral director because of volume discounts or other considerations extended due to the volume of business.

However this may be, we think the terms of the contract require the funeral director to inform the insurance company of his costs over the past year and if these costs reflect an increase, so inform the insurance company so that there can be a commensurate increase in the remuneration to the funeral director by the insurance company.

It was stated in Lawson v. Townes, Oliver & Co., 2 Ala. 373, that:

"In all cases where the liability of the defendant depends on notice of the existence of a particular fact, such notice is of the gist of the action, and should be specially averred; and it should also appear, that it was given in due time and to a proper person."

In the case at bar all but one of the policies had been serviced prior to any notice of change in the cost of merchandise. In the absence of notice to increase the costs of merchandise, the appellant could not be held liable for its failure to increase the remuneration to appellee for its claimed increase in costs of merchandise used in servicing appellant's burial policies.

The trial court's judgment is in error for it includes amounts for increased costs of merchandise due appellee for which no notice was given to appellant nor was appellant given an opportunity to increase its remuneration to appellee for these increased costs due to the failure of appellee to inform appellant of the increase in costs of the nine burial policies which appellee had serviced for appellant.

Due to the errors committed by the trial court as hereinabove outlined, this case is reversed and remanded.

Reversed and remanded.