Leisure American Resorts, Inc. ("Leisure American"), appeals from a judgment entered against it after a jury returned a verdict for Carbine Construction Company ("Carbine") in Carbine's suit against Leisure American for breach of contract. We affirm.
 Facts
In August 1983, Leisure American was owned in equal shares by two individuals. Winston Biggs, one of the owners, was also a director of the corporation. At that time, Mr. Biggs was also the sole owner of a corporation called Bileco, Inc. Prior to August 1983, Leisure American and Bileco occupied office space in separate buildings in Florence, Alabama.
Sometime in August 1983, officials of both corporations, including Winston Biggs; James Hough, president of Leisure American; and Richard Stafford, chief financial officer for Leisure American, met with Eugene Carbine of Carbine Construction Company regarding renovations to be performed on a building owned by Winston Biggs and another individual. The object of the renovation was to facilitate a proposed joint occupancy of the building by Bileco and Leisure American. A principal element of the renovation was the construction *Page 410 
of a partition between the areas to be occupied by the respective companies. In addition, Carbine was to paint, clean the carpets, put in plasterboard and wallpaper, and add a window on the side to be occupied by Leisure American. Carbine agreed to renovate the building on a "cost plus" basis. It is undisputed that none of the officials expressly agreed to pay Carbine for the work.
Carbine worked on one side of the building at a time, completing the remodeling of the side to be occupied by Bileco in September or early October. Bileco moved its offices into the building in October or November 1983. The work on the side to be occupied by Leisure American was performed in December and that company moved its offices into the building just before Christmas.
In January or February 1984, after Leisure American had moved its offices into the building, it called Carbine back to install some bookcases in the area occupied by its employees. Carbine completed the work on the bookcases and on February 27, 1984, sent out a billing invoice for the bookcases in the amount of $1,508.20. It is undisputed that Leisure American never denied responsibility for the work done on the bookcases.
When all of the work was completed, the two companies shared a common reception area and a common receptionist. A visitor entering the building would turn right to go into the space occupied by Bileco and would turn left to go into the area occupied by Leisure American.
As might be expected under these circumstances, responsibility for the cost of the renovations for Leisure American was disputed from the beginning. Most of the testimony at trial focused on which company first received a bill for the work. Evidence on that issue often conflicted sharply. James Hough testified that the bill for the renovations on the Leisure American side was "pushed back and forth" between the offices of Bileco and Leisure American, as both companies disclaimed responsibility for the bill. There was evidence that Bileco paid for the renovations done on its side of the building.
On June 6, 1985, while the bill for the renovation was being "pushed back and forth," Mr. Carbine signed an agreement with Leisure American, the text of which read:
 "This is to acknowledge the agreement reached as follows:
 "A. That Carbine Const. will be PAID IN FULL on the following debts:
 "1) Invoice dated Feb 27, 1984 to Bileco for repairs to office complex (bookcases) in the amount of $1508.20
 "2) Disk storage for Leisure Amer. Resorts for Aug 1984-June 1985 11 months @ $25. per mth = $275.00
 "B. That Carbine will tender a check to Leisure Amer for $400.00
 "C. In consideration of the above Carbine will receive:
"1) Secretarial Desk, wood, right arm
"2) Executive chair, brown.
"3) Four office chairs, rust vinal [sic]
"4) Matching Sofa Loveseat, white
"5) Coffee table
"(6) Bookcases (2)"
On March 16, 1988, Carbine sued Leisure American for $21,072.67 on counts based on breach of contract, account stated, and work and labor done. The trial judge submitted the breach of contract claim to the jury and directed a verdict for Leisure American on the other two counts. The jury returned a verdict for Carbine in the amount of $19,564.47. The trial judge failed to rule within 90 days on Leisure American's motions for JNOV or new trial, and those motions were deemed denied by operation of law. Ala.R.Civ.P. 59.1.
Leisure American presents only two issues for review. First, it contends that the June 6, 1985, agreement, as a matter of law, constitutes an accord and satisfaction of the disputed claim for the office renovation. Second, it argues that the renovation amounted to a sale of goods and that, as a matter of law, recovery on the oral agreement is barred by the Uniform Commercial Code's statute of frauds provision. Leisure American further asserts that the trial *Page 411 
judge erred in denying its motion for a new trial, because, it argues, the verdict for Carbine on the breach of contract claim was against the great weight of the evidence.
A motion for JNOV tests the sufficiency of the evidence and "should be denied if there is any conflict in the evidence for the jury to resolve." Black Belt Wood Co. v. Sessions,514 So.2d 1249, 1251 (Ala. 1986). The existence of a conflict in the evidence is to be determined by the "substantial evidence rule." Ala. Code 1975, § 12-21-12. We shall first examine whether, regarding the two issues presented by Leisure American, the trial judge erred in refusing to rule for Leisure American as a matter of law.
 Accord and Satisfaction
An accord and satisfaction is an agreement reached between competent parties regarding payment of a debt the amount of which is in dispute. Limbaugh v. Merrill Lynch, Pierce, Fenner Smith, 732 F.2d 859, 861 (11th Cir. 1984); O'Neal v. O'Neal,284 Ala. 661, 227 So.2d 430 (1969). There can be no accord and satisfaction "without the intentional relinquishment of a known right." Id. at 663, 227 So.2d at 431.
Like any other contract, a valid accord and satisfaction requires consideration and a meeting of the minds regarding the subject matter. Bank Indep. v. Byars, 538 So.2d 432, 435
(Ala. 1988); Farmers Merchants Bank of Centre v. Hancock,506 So.2d 305, 310 (Ala. 1987); Austin v. Cox, 492 So.2d 1021, 1022
(Ala. 1986); Ray v. Alabama Central Credit Union,472 So.2d 1012, 1014 (Ala. 1985).
Whether the parties have reached an accord and satisfaction is almost always a question for the jury. Austin,492 So.2d at 1022; see also Farmers Merchants Bank of Centre v. Hancock,506 So.2d 305 (Ala. 1987); Stephenson Brick Co. v. BessemerEng'g Constr. Co., 218 Ala. 325, 118 So. 570 (1928); W.B.Davis Hosiery Mill, Inc. v. Word Lumber Co., 49 Ala. App. 492,273 So.2d 469 (1972), cert. denied, 290 Ala. 372, 273 So.2d 474
(1973).
The issue in this case is whether the parties ever reached any agreement regarding the disputed sum — the amount due for the office renovations. The record reflects substantial evidence, much of it contradictory, from which the jury could have found that the parties reached no such agreement.
For example, the verdict indicates a finding that the $21,072.67 reflected amounts due on entirely separate accounts — a liquidated debt of $1508.20 for construction of the bookcases and an unliquidated claim of $19,564.47 for office renovations. In that case, any agreement reached between the parties regarding payment of the $1508.20 would not have effected an accord and satisfaction on a separate debt owing for the office renovations.
Indeed, evidence indicated that Carbine performed a number of assorted jobs for Leisure American at various times and at various locations, including Gulf Shores, Talladega, and Florence. Leisure American received a number of bills from Carbine during 1984 for various jobs performed by Carbine. The office space was renovated in October and November 1983, before Leisure American moved its offices into the building, as a necessary prerequisite to the relocation; the work on the bookcases was done after the relocation. The former bookkeeper for Leisure American testified that the invoice of February 27 for $1,508.20, represented a transaction separate from that of the office renovations. Counsel for Leisure American conceded that the work for the bookcases was billed separately from that for the office renovations. The bill for the renovations was disputed from the beginning, while Leisure American never denied liability for the work done on the bookcases.
In addition, the agreement signed on June 6, alleged to constitute an accord and satisfaction, expressly referred only to the $1508.20 debt evidenced by the February 27 invoice. The jury could have found, and apparently did find, that the undisputed amount of $1508.20 shown on the February 27 invoice and payment under the June 6 agreement represented the exact amount due for the construction of the bookcases *Page 412 
and did not implicate the disputed amount due for office renovation.
In short, evidence elicited at trial amply supported a finding that the parties failed to reach an accord and satisfaction because of the absence of mutual assent regarding the subject matter of the June 6 agreement. The trial judge did not err, therefore, in denying Leisure American's motion for JNOV on the issue of accord and satisfaction.
 Statute of Frauds
Leisure American next contends that Carbine's claim is a claim based on an oral "transaction in goods" valued at $500 or more. Consequently, it contends that the entire claim is barred by Ala. Code 1975, § 7-2-201, the Uniform Commercial Code's statute of frauds. In its brief, it argues that the disputed amount due for the office renovations includes approximately $4,808.07 worth of "goods" and that the trial judge erred in denying its motion for JNOV on the statute of frauds issue.
The trial judge instructed the jury on Leisure American's statute of frauds defense in the following manner:
 "The Commercial Code provides that a contract for the sale of goods for a price of $500 or more is not enforceable, unless there is some writing to indicate that a contract for the sale has been made between the parties and signed by the party against whom it is sought to be enforced. A written contract is not required if the goods have been received and accepted."
More specifically, Ala. Code 1975, § 7-2-201(3)(c) provides: "A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable . . . [w]ith respect to goods for which payment has been made and accepted or which have been received and accepted."
This section serves to "validate the contract only for the goods which have been accepted." Id. comment 2. Thus, it follows that receipt and acceptance by one party of all of the goods or performance of the other party validates the entire contract. "Receipt and acceptance . . . of goods . . . constitute[s] an unambiguous overt admission by both parties that a contract actually exists." Id.; Dykes Restaurant Supply,Inc. v. Grimes, 481 So.2d 1149, 1150 (Ala.Civ.App. 1985); see also Trimble v. Todd, 510 So.2d 810 (Ala. 1987).
The Uniform Commercial Code defines "acceptance" as follows:
"(1) Acceptance of goods occurs when the buyer:
 (a) After a reasonable opportunity to inspect the goods, signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
 (b) Fails to make an effective rejection (subsection (1) of section 7-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
 (c) Does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."
Ala. Code 1975, § 7-2-606. A cursory reading of this section reveals that the issue whether the buyer has accepted the goods is fact specific. Such matters fall squarely within the province of the jury. Engle Mortgage Co. v. Triple K LumberCo., 56 Ala. App. 337, 341, 321 So.2d 679, 682
(Ala.Civ.App. 1975).
In this case, the jury could have found a valid acceptance, based on testimony elicited at trial. For example, the evidence tended to show that the office renovations were completed in December 1983, in anticipation of occupation by Leisure American upon completion of the work. The president of Leisure American testified that he personally pointed out the specific improvements and renovations to be done to the portion of the building to be occupied by Leisure American, and he testified that Carbine's performance was satisfactory. Evidence also indicated that immediately after the work was completed, Leisure American moved its offices into the renovated area and that it continued to occupy those offices without any complaint about Carbine's performance.
Carbine contends that the renovation constituted a service and, therefore, falls *Page 413 
outside the coverage of the Uniform Commercial Code provision. However, it is unnecessary for us to decide, and we do not decide, whether the Uniform Commercial Code applies in this case, because even if it did, the evidence was sufficient to allow the jury to determine that Leisure American had received and accepted the "goods." That being so, regardless of how we characterize the contract involved in this case, the statute of frauds would be no bar to Carbine's claim. Therefore, the trial judge did not err in denying Leisure American's motion for JNOV.
 Breach of Contract
Regarding Leisure American's contention that the verdict finding a breach of contract was against the great weight of the evidence, we note the following well established rule:
 "The decision of a trial court refusing to grant a new trial on the ground that the verdict is contrary to the great weight and preponderance of the evidence will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust."
Green Oil Co. v. Hornsby, 539 So.2d 218, 219 (Ala. 1989); Jawadv. Granade, 497 So.2d 471, 474 (Ala. 1986).
After a careful review of the record, we are unable to say that the verdict was against the great weight of the evidence. An implied-in-fact contract arises where all of the circumstances surrounding the transaction, including the prior relationship and the former course of dealing of the parties, and the "common understanding of men, show a mutual intent to contract." Water Works Sanitary Sewer Bd. of Montgomery v.Norman, 282 Ala. 41, 45, 208 So.2d 788, 791 (1968); Broyles v.Brown Eng'g Co., 275 Ala. 35, 38, 151 So.2d 767, 770 (1963).
In the instant case, James Hough was president of Leisure American at the time of the August meeting with Eugene Carbine. There was evidence that for a number of years Mr. Carbine had been acquainted with Mr. Hough in Mr. Hough's capacity as president of Leisure American and that Carbine had done construction work for Leisure American through Mr. Hough before the transaction that gave rise to this action. Mr. Carbine testified that Mr. Hough contacted him and set up the August meeting in which the transaction was discussed.
Mr. Hough testified that during the August meeting, he, Richard Stafford, and Philip Williams "walked" Mr. Carbine through the area to be occupied by Leisure American and pointed out the work to be done. More specifically, Mr. Hough testified that he told Mr. Carbine: "Gene, I got to have a window in my office." There was testimony that Winston Biggs, in a similar manner, directed the work to be done on the Bileco side of the building.
Although the record contains evidence from which the jury could have reached a different result, we conclude that, under the circumstances of this case, the evidence supports a finding that an implied-in-fact contract arose as a result of the meeting in August between Eugene Carbine and executive officials of Leisure American, and that Leisure American breached that contract by its failure to pay Carbine. When a motion for a new trial is grounded upon the contention that the verdict is against the great weight of the evidence, we will not reverse a trial judge's denial of the motion if "evidence [is] presented that, if believed, would support the verdict."Stokes v. Long-Lewis Ford, Inc., 549 So.2d 51, 52 (Ala. 1989). In such a case, "the trial court's action in denying the motion would not be a clear abuse of some legal right and the record would not plainly and palpably show that the trial court was in error." Id. Because we can find no clear abuse in this case, the judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur. *Page 414