909 So.2d 827 (2005)
Joanna Wilkerson WALLACE
v.
Leon Joseph WALLACE.
2030855.
Court of Civil Appeals of Alabama.
March 11, 2005.
*828 Cindy S. Schuessler of Schuessler & Sandlin, Florence, for appellant.
Lindsey Mussleman Davis of Holt, Mussleman, Holt & Morgan, Florence, for appellee.
THOMPSON, Judge.
On April 21, 2003, Leon Joseph Wallace ("the husband") filed a declaratory-judgment action against Joanna Wilkerson Wallace ("the wife"). The husband requested that the trial court declare that he had satisfied his obligation under the parties' property-settlement agreement, which had been incorporated into their divorce judgment. On May 13, 2003, the wife answered the husband's petition and filed a counter-petition requesting that the trial court find the husband in contempt of court for his alleged failure to pay her the amount due under the property-division portion of their divorce judgment. The husband's answer to the counterpetition, as amended, asserted the affirmative defense of accord and satisfaction.[1] The wife moved the trial court for a summary judgment; the trial court denied that motion.
The trial court conducted a hearing on November 18, 2003, at which it received ore tenus evidence. On January 23, 2004, the trial court entered a judgment in favor of the husband, finding, among other things, that the husband had fully satisfied his obligations under the property-division portion of the divorce judgment. On February 20, 2004, the wife filed a post-judgment motion; that motion was denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P. The wife timely appealed.
Our review of the record reveals the following facts. On September 24, 2001, the parties were divorced by a judgment of the trial court. The divorce judgment incorporated the terms of an agreement reached by the parties. The judgment *829 stated that the parties jointly owned a home, the marital home, which was subject to a mortgage indebtedness and an equity-line indebtedness. The parties had entered into an option-to-purchase contract with a third party to sell the marital home. The divorce judgment provided that if the option to purchase was not exercised, the wife would have the "use and possession" of the marital home until the home was sold. The judgment also provided that the parties would equally divide the responsibility for making the mortgage and equity-line payments until the marital home was sold. The judgment did not provide a specific time limitation for the duration of the wife's use and possession of the marital home or for the duration of the requirement that the parties equally share responsibility for the payments. Under the judgment, the shared payments were to continue until the "closing of the sale" of the marital home. Additionally, under the heading "Property Settlement," the judgment provided:
"The husband shall pay to the wife the sum of $8,750 in 22.72 monthly payments of $385 each over a term not to exceed 28 months. Payments shall begin on the first day of the month following the closing of the sale of the marital residence."
(Emphasis added.)
At the hearing in this matter, the wife testified that the option-to-purchase contract was not exercised and that the sale of the marital home anticipated by the parties at the time of the divorce did not materialize. The wife stated that she had made an effort to sell the marital home by placing a sign in the yard and by showing the marital home to potential buyers but that the marital home did not sell until January 2003, approximately 16 months after the parties were divorced.
According to the wife, she lived in the marital home by herself during that period; the husband had moved to Florida before their divorce was finalized. The wife stated that throughout the 16-month period during which she lived in the marital home after the divorce, she divided the marital-home payments with the husband. The wife explained that even after the marital home was sold, she continued to live in the home as a tenant of the buyer. She remained there until June 2003, when contractors finished building a new home she had purchased. The wife stated that the husband occasionally expressed to her his concern about the length of time the marital home had been on the market and about how much it was costing him to share the payments on the debt owed on the marital home with her.
The husband testified that he sent an e-mail message to the wife in May 2002 expressing his concern about the delay in the sale of the marital home. The husband indicated in his testimony that the wife had failed to properly market the marital home. The husband explained that when he was in town on one occasion, he observed that the marital home did not have a "for sale" sign in the yard, that the home was not listed with any real-estate agency, and that there was no other type of marketing of the home. After that, the husband testified, he listed the marital home with his own realtor. A "real estate sales contract" submitted to the trial court reflects that the marital home was sold approximately four months after the husband listed it with a realtor.
The husband testified that since the parties' divorce he had paid the wife a total of $9,599.83 for his one-half share of the indebtedness on the marital home. The husband submitted into evidence his calculations to support his claim of having paid that amount.
*830 The husband testified that in February 2003, after the marital home had been sold, he sent the wife a check for $840 and an accompanying letter dated February 17, 2003. The husband submitted into evidence a copy of the check and the letter. The "memorandum line" of the check read "property settlementpayment in full." In the February 17, 2003, letter the husband wrote, in relevant part:
"[D]ocumentation will show that I have met the spirit of the [settlement agreement]. As the only person living in the house and driving the car, you are the sole beneficiary of the funds that have been paid....
"In fact, you have gotten your money (or the benefit thereof) faster by the turn of events. Instead of paying $8,750 over a period (not to exceed 28 months), I have paid over $7,910 in 15 months. Enclosed you will find a check for the balance of the property settlement in the amount of $840."
(Emphasis added.)
The wife testified that after she received the husband's check in February 2003 she consulted with her attorney. Following the consultation, the wife's attorney wrote the husband's attorney a letter dated February 24, 2003. That letter, submitted into evidence, stated in relevant part:
"[The wife] contacted me and informed me the closing on the house was in January 2003. Under the terms of the divorce [judgment], [the husband] is to begin making monthly payments to [the wife] the month following the closing in the amount of $385 per month until the sum of $8,750 has been paid. [The wife] informed me she received a check from [the husband] in the amount of $840 which stated `property settlementpayment in full.'
"I do not know the rationale behind [the husband's] actions, but the balance due per the court order is $7,910.
"....
"Please forward this letter to [the husband] and advise him to make the monthly payments as ordered to avoid contempt proceedings."
The wife testified that after she consulted with her attorney, she crossed out the "in full" phrase from the check. The wife then cashed the check in April 2003.
The trial court's January 23, 2004, judgment states, in pertinent part:
"The court has considered the evidence presented and finds that said agreement presumes a reasonable time period will apply as to the performance under the terms of the [divorce judgment]. The court finds that more than 16 months passed from the date of the [judgment] until actual closing of the house and that during that time, the husband paid a total sum of $8,432 for the house in which the wife continued to live until the closing and, in fact, until her house was ready to be moved into several months later.
"The court further finds that the husband exercised due diligence in attempting to get the house sold and that there was evidence which indicated that the wife, who continued to reside in the house with the husband paying one-half of the payments on the house and who had relocated to Florida, did not necessarily exercise the same level of diligence in and about the sale of the house.
"The court further finds that following the closing of the sale of the house, the husband sent to the wife a check for $840 which he stated was payment in full on any amounts due under the property settlement in light of amounts which he had previously paid during the pendency of the sale. The husband set *831 forth this accounting in a letter to the wife, which accompanied the $840 check. The court further finds that the husband marked the check `property-settlement-payment in full' when it was sent to the wife. The wife altered said check and marked out the `in full' portion. She then endorsed the check and negotiated it for the $840 amount. The wife does not dispute that she altered the check in this fashion and that she was aware of the husband's position that this was payment in full.
"The court finds that agreements entered into between a husband and a wife are not unlike other contracts entered into in Alabama. The court will presume the parties intend to make a reasonable contract rather than an unreasonable one.
"The court finds that the wife's action by taking the check marked payment in full and marking out the `in full' portion then accepting the proceeds therefrom constitutes an accord and satisfaction of the amounts owed. Further, the court finds that the husband otherwise discharged his obligations under the property settlement for a period longer than a reasonable period of time as would be construed under the terms of the original settlement agreement between the parties. As such, the husband has fully discharged his obligation to the wife by the actions noted herein and does not owe her any additional sums under the property settlement."
In her brief on appeal, the wife argues that the trial court erred in finding that the parties had entered into an accord and satisfaction that extinguished the husband's property-division obligation. In Newson v. Protective Industrial Insurance Co. of Alabama, 890 So.2d 81, 87 (Ala. 2003), our supreme court defined an accord and satisfaction as
" `an agreement reached between competent parties regarding payment of a debt the amount of which is in dispute. There can be no accord and satisfaction "without the intentional relinquishment of a known right."'"
(Quoting Leisure American Resorts, Inc. v. Carbine Constr. Co., 577 So.2d 409, 411 (Ala.1990).) The defense of accord and satisfaction requires:
"(1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds, and (4) consideration. Ray v. Alabama Central Credit Union, 472 So.2d 1012, 1014 (Ala.1985), quoting Craft v. Standard Accident Insurance Co., 220 Ala. 6, 9, 123 So. 271, 273 (1929). Each of these four elements must be established in order to be successful on this defense."
Austin v. Cox, 492 So.2d 1021, 1022 (Ala. 1986).
In support of her argument on this issue, the wife first contends that the parties lacked the required element of a "meeting of the minds" to enter into an accord and satisfaction. The wife directs this court to the February 24, 2003, letter drafted by her attorney in which she contested the husband's position that the February 17, 2003, letter and check constituted the balance of the amount he owed her under the property-division portion of the divorce judgment and in which she urged the husband to pay $7,910, the balance she contended remained unpaid under the property-division portion of the divorce judgment. The wife maintains that that evidence indicates that the parties did not have a meeting of the minds with regard to whether the husband's February 17, 2003, letter and check constituted a satisfaction of the amount the husband owed the wife under the terms of the parties' divorce judgment. As discussed below, however, we cannot agree.
*832 In Ex parte Meztista, 845 So.2d 795 (Ala.2001) a case involving the dissolution of a partnership, Meztista, one of the partners, performed a final accounting of the partnership's assets and presented the calculation to his partner, Hylton. However, Meztista did not allow Hylton to check the partnership books or provide any explanation of certain expenses included in the accounting, even though Hylton had requested that information. Pursuant to that final accounting, Meztista issued a check payable to Hylton. The check contained the phrase "final payment/payment in full." Ex parte Meztista, 845 So.2d at 796. After she received the check, Hylton wrote on it the terms "under protest" and "cashing this check does not constitute my acceptance of this amount as payment in full." Ex parte Meztista, 845 So.2d at 796. Hylton then cashed the check.
Subsequently, Hylton brought an action against Meztista and the partnership alleging a breach of the partnership agreement and requesting a dissolution of the partnership and an accounting of the partnership profits. Meztista moved the trial court for a summary judgment, contending that Hylton's cashing of the check constituted an accord and satisfaction. The trial court agreed and entered a summary judgment in favor of Meztista. This court reversed the judgment of the trial court. Hylton v. Meztista, 845 So.2d 792 (Ala.Civ. App.2000).
On certiorari review, our supreme court reversed the judgment of this court. Ex parte Meztista, 845 So.2d at 798. The court began its analysis by explaining that an accord and satisfaction is contractual in nature: "`Like any other contract, a valid accord and satisfaction requires consideration and a meeting of the minds regarding the subject matter.'" Ex parte Meztista, 845 So.2d at 797-98 (quoting Leisure American Resorts, 577 So.2d at 411). In addressing whether there had been a "meeting of the minds," our supreme court rejected this court's reliance on Hylton's "subjective intent," and it held that where a party "endorsed and deposited [a] check, [the party] agreed to the condition upon which it was offered, and [the party] is estopped to deny that agreement." Ex parte Meztista, 845 So.2d at 798. In so holding, our supreme court quoted from the dissent in Hylton v. Meztista, supra, that was authored by Judge Crawley and that Judge Thompson joined. That dissent stated, in pertinent part:

"`[A party's] placing a restrictive endorsement on the check does not create an issue of fact as to whether an accord and satisfaction had occurred. This court has held that a party in [the wife's] position has two options: (1) reject the offer of the check as full satisfaction of the disputed claim; or (2) accept the offer of the check as a full satisfaction by cashing or depositing the check. Public Nat'l Life Ins. Co. v. Highsmith, 47 Ala.App. 488, 256 So.2d 912 (Ala.Civ. App.1971). The supreme court has held that a party in [the wife's] position does not have the option of accepting the offer of the check and placing a restrictive endorsement on it. Boohaker v. Trott, 274 Ala. 12, 16, 145 So.2d 179, 183 (1962) ("The fact that the plaintiff attempted to `amend' the legend on the check [from full payment to partial payment] cannot avail him."). Such an altering of the terms of the offer does not affect the validity of the accord and satisfaction. Id. According to the law as stated by Highsmith and Boohaker, [the wife's] endorsement on the check, indicating that she was not accepting the check as full payment . . ., is not relevant in light of the fact that she deposited the check. Her action of depositing the check completed the accord and satisfaction.'"
*833 Ex parte Meztista, 845 So.2d at 797 (quoting Hylton v. Meztista, 845 So.2d at 795 (Crawley, J., dissenting)).
In this case, the husband submitted a copy of the check and the accompanying February 17, 2003, letter to the trial court. The wife testified that, after receiving the check and the letter, she sought her attorney's advice on the matter and then negotiated the check. Even though the wife argues on appeal that by endorsing and depositing the check she did not intend to extinguish the husband's obligation under the property-division portion of the parties' divorce judgment, under the authority of Ex parte Meztista, supra, the wife's subjective intent is not determinative. The wife, with knowledge that the husband contended that his obligation under the property-division portion of the divorce judgment had been met by the tender of the February 17, 2003, check, agreed to the husband's condition by endorsing and depositing the check; therefore, she is estopped from denying that the required element of a "meeting of the minds" was absent for the purpose of determining whether an accord and satisfaction has occurred. Ex parte Meztista, 845 So.2d at 798.
The wife further contends that the husband failed to meet certain other elements of an accord and satisfaction. Specifically, the wife argues that the husband did not tender the check in "good faith" and that there was no "bona fide dispute," as required under § 7-3-311, Ala.Code 1975.[2] Section 7-3-311 applies where "an accord and satisfaction is asserted on the basis of a written notation on a negotiable instrument, or a written communication accompanying a negotiable instrument." Alabama Comment to § 7-3-311, Ala.Code 1975. This opinion discusses the elements of a good-faith offer of an accord and satisfaction together with the requirement of a bona fide dispute.
In Ex parte Meztista, supra, our supreme court held that the element of good faith relates to "the offer of the accord, and not [to] any conduct relating to the underlying contract." Ex parte Meztista, 845 So.2d at 798. The court explained:
"`Good faith is demonstrated when the party tendering the instrument offers a check with the intent to honestly enter into an accord and satisfaction while observing reasonable commercial standards of fair dealing. The focus of the good faith inquiry is on the offer of the accord, and not on the actions of the parties in performing the underlying contract.'"
Ex parte Meztista, 845 So.2d at 799 (quoting Webb Bus. Promotions, Inc. v. American Elecs. & Entertainment Corp., 617 N.W.2d 67, 73 (Minn.2000)). Our supreme court, citing the fact that the parties were sophisticated business people who were aware of their rights and the nature of their dispute, concluded in Ex parte Meztista, supra, that there was no evidence to indicate that Meztista did not tender the *834 check to Hylton in good faith. 845 So.2d at 799-800.
With regard to the element of a bona fide dispute, our supreme court, in Ex parte Southern Cotton Oil Co., 207 Ala. 704, 93 So. 662 (1922), presented a thorough discussion of that element of an accord and satisfaction. The supreme court stated:
"`While it is not necessary that the dispute or controversy should be well founded, it is necessary that it should be in good faith. Without an honest dispute, an agreement to take a lesser amount in payment of a liquidated claim is without consideration and void. A dispute cannot be raised for the mere purpose of extorting money. And an arbitrary refusal to pay, based on the mere pretense of the debtor, made for the obvious purpose of exacting terms which are inequitable and oppressive, is not such a dispute as will satisfy the requirements of the rule.'"
Ex parte Southern Cotton Oil Co., 207 Ala. at 705, 93 So. at 664 (quoting 1 C.J., Accord & Satisfaction § 75 (1914)). Our supreme court went on to state:
"`If a debt or claim be disputed ... at the time of payment, the payment, when accepted, of a part of the whole debt is a good satisfaction and it matters not that there was no solid foundation for the dispute. The test in such cases is: Was the dispute honest or fraudulent? If honest, it affords a basis for an accord between the parties, which the law favors, and the execution of which is the satisfaction.'"
Ex parte Southern Cotton Oil Co., 207 Ala. at 706, 93 So. at 664 (quoting Simons v. American Legion of Honor, 178 N.Y. 263, 70 N.E. 776 (1904)).
In the instant case, the husband introduced into evidence an accounting of the payments he had made toward the debt owed on the marital home during the approximately 16 months during which the wife lived in the marital home after the divorce judgment was entered. The husband also submitted to the trial court a copy of the $840 check conspicuously stating "property settlement  payment in full," and the February 17, 2003, letter in which he asserted that he had already paid the wife $7,910 towards his obligation under property-division portion of the divorce judgment and that only $840 remained unpaid. The husband also indicated in that February 17, 2003, letter that the enclosed check was for the "balance of the property settlement" and specified "payment in full" on the check. The wife consulted an attorney before she endorsed and deposited the husband's check. We conclude that there is substantial evidence to support the conclusion that the husband offered his check as a good-faith offer to extinguish his obligation under the property-division portion of the divorce judgment. Ex parte Meztista, supra. Also, there is substantial evidence to support the conclusion that the husband's dispute of the amount he owed the wife under the divorce judgment was "real, not simulated, and based upon a ground that is at least colorable." Ex parte Southern Cotton Oil Co., 207 Ala. at 706, 93 So. at 664.
In her brief on appeal, the wife also contends that the trial court's judgment amounts to an impermissible modification of the property-division portion of the parties' divorce judgment. The wife is correct in her assertion that, generally, a trial court may not modify a property-division portion of a divorce judgment more than 30 days after the entry of the judgment. McGiboney v. McGiboney, 679 So.2d 1066, 1068 (Ala.Civ.App.1995); Russell v. Russell, 386 So.2d 758 (Ala.Civ.App. 1980). However, in this case, the trial court found that the husband had fully *835 satisfied his obligation to the wife under the property-division portion of the divorce judgment. The record does not support a conclusion that the trial court's January 23, 2004, judgment constituted a modification of the property-division portion of the parties' divorce judgment. Accordingly, we conclude that the wife's argument as to this issue is without merit.
The wife's request for an attorney fee on appeal is denied.
AFFIRMED.
MURDOCK and BRYAN, JJ., concur.
CRAWLEY, P.J., dissents, with writing, which PITTMAN, J., joins.
CRAWLEY, Presiding Judge, dissenting.
I dissent because I would reverse the trial court's judgment and render a judgment in favor of the wife. The trial court interpreted the marriage settlement agreement incorporated into the parties' divorce judgment in such a way as to abrogate the intent of the parties, and there was no valid accord and satisfaction.
In its judgment in this matter, the trial court quoted section 3.1 of the marriage settlement agreement between the parties, which provides:
"The parties are the joint owners of a house and lot located at 809 Olive Street, Florence, Alabama, the `Residence', which is subject to a mortgage to the Chase Manhattan Mortgage Corporation, and an equity line of credit to AmSouth Bank. There is a pending option to purchase said property, which option is due to be exercised on or before October 28, 2001. Assuming said option to purchase is exercised, the Wife will receive the net proceeds from the sale of the residence, estimated to be $5,700.00. If the net proceeds are less than $5,000.00, the Husband shall pay the Wife the difference between the net proceeds and $5,000.00. If the net proceeds exceed $5,000.00, the Husband shall receive credit against monthly payments due to the Wife under paragraph 7.1 herein below for all net proceeds in excess of $5,000.00.
"If the option to purchase is not exercised, the Wife shall have the use and possession of the residence and the parties shall divide equally the monthly mortgage payment to Chase Manhattan Mortgage Corporation and the monthly payments on the equity line to AmSouth each month, beginning November 1, 2001 and until the closing of the sale of said property. Upon closing of the sale, the Wife shall receive the first $5,000.00 of the net equity and the parties shall divide equally any net equity in excess of $5,000.00. The net proceeds shall be defined as the proceeds remaining after deducting the mortgage debt, real estate commission, cost of repair (if necessary) and closing expenses."
The court then went on to find in part:
"2. The Court has considered evidence presented and finds that said agreement presumes that a reasonable time period will apply as to the performance under the terms of the [divorce judgment] set forth above. The Court finds that more than 16 months passed from the date of the [divorce judgment] until the actual closing of the house and that during that time, the husband paid a total sum of $8,432.00 for the house in which the wife continued to live until the closing and, in fact, until her house was ready to be moved into several months later. The Court further finds that the husband exercised due diligence in attempting to get the house sold and that there was evidence which indicated that the wife, who continued to reside in the house with the husband paying one-half *836 of the payments on the house and who had relocated to Florida, did not necessarily exercise the same level of diligence in and about the sale of the house.
". . . .
"4. The Court finds that agreements entered into between a husband and wife are not unlike other contracts entered into in Alabama. The Court will presume the parties intend to make a reasonable contract rather than an unreasonable one."
"General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists." Ryan Warranty Servs., Inc. v. Welch, 694 So.2d 1271, 1273 (Ala.1997). The intent of the contracting parties is to be determined by considering the contract as a whole, not by focusing on just one provision. Lewis v. Oakley, 847 So.2d 307 (Ala.2002); Homes of Legend, Inc. v. McCollough, 776 So.2d 741 (Ala.2000).
By applying the presumption that the parties intended a reasonable time period to apply to the provisions of the marriage settlement agreement, the court fundamentally changed the contract, interpreting it contrary to the intent of the contracting parties. Moreover, the trial court misapplied the law to the facts.
"Although the ore tenus presumption applies to the trial court's findings of fact, no such presumption adheres to the trial court's application of the law to those facts. Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). The husband's arguments are based upon the interpretation of certain provisions and terms in the parties' [marriage settlement] agreement; such interpretations, like the interpretation of unambiguous contracts, are questions of law. See Agee, 669 So.2d at 105; Stacey v. Saunders, 437 So.2d 1230, 1233 (Ala.1983)."
Laney v. Laney, 833 So.2d 644, 646 (Ala. Civ.App.2002).
The amount of time that the provisions of section 3.1 of the marriage settlement agreement could have been operative is irrelevant. That section takes into account the existence of an option to purchase the marital residence held by the University of North Alabama. The marriage settlement agreement contemplates the exercise of this option, but it also contemplates the possibility that the option might not be exercised. Depending on whether the option was exercised, the net proceeds from the sale of the marital residence would be divided in different ways.
Ultimately the option was not exercised. However, if the option had been exercised on or before October, 28, 2001, and the house had been bought for the listed price of $103,900, the husband would have received a credit towards his property-division obligation under section 7.1 of the marriage settlement agreement of only $3,212.48. The husband would still have paid $899.23  half of the payments owed on the debt on the residence for one month. The total debt remaining on the residence would have been $89,414.52$65,262.91 due on the first mortgage and $24,151.61 due on the equity line of credit. Additionally, there would have been a lawyer's fee of $39 and commission of $6,234. There would have been net proceeds of $8,212.48. The wife would have received the first $5,000 of the net proceeds, and the husband would have received a credit of $3,212.48 towards his obligation under section 7.1 of the marriage settlement agreement.
However, the option was not exercised. Instead, it took 16 months to sell the house. The provisions of section 3.1 of the marriage settlement agreement are still reasonable, even without explicitly providing a time period during which those provisions *837 would be applicable. The marriage settlement agreement provides that the wife "shall have the use and possession of the residence and the parties shall divide equally the monthly mortgage payment[s]... until the closing of the sale of said property." The period of time it took to reach the closing of the sale is immaterial because, at the closing, the mortgage debt on the residence would be satisfied, regardless of when the house sold. The marriage settlement agreement takes this fact into consideration by defining net proceeds as "the proceeds remaining after deducting the mortgage debt, real estate commission, cost of repair (if necessary) and closing expenses." Additionally, the marriage settlement agreement provides for disposition of the net proceeds whether or not the option was exercised.
The husband seems to believe, and the trial court must have agreed, that he is entitled to a credit for his payment of half of the debt payments made during the 16-month period it took to sell the house against his $8,750 obligation under section 7.1 of the marriage settlement agreement. However, the husband admitted that those payments were made pursuant to the agreement.
"Q. [Wife's counsel:] These are simply payments that were made as you were ordered to do under the terms of the agreement, right?
"A. Yes."
The trial court does not say what a reasonable time period to apply the provisions of section 3.1 of the agreement would have been. Even so, it failed to take into account the plain language of the agreement or the effects that the language in each provision of the agreement would have on the agreement as a whole. See Laney v. Laney, supra. If the house had been sold on October 29, 2001, one day after the option had expired (presumably a reasonable period of time), and the parties had received the full list price of $103,900, then, pursuant to section 3.1 of the agreement, the husband would have been entitled to only $1,606.24. After paying the costs, the mortgage debts, and the real estate commission, there would have been $8,212.48 in net proceeds. Instead of a credit of any amount over $5,000, the husband would have received only half of the net proceeds in excess of $5,000. The net proceeds in excess of $5,000 would have been $3,212.48; thus, the husband would have been entitled to $1,606.24, half of that amount.
If the house had been sold for the listed price of $103,900 on March 9, 2002, roughly six months after the divorce, the husband would have received $3,979.36 as his share of the net proceeds. If this had been the case, the husband would have been required to pay, pursuant to section 3.1 of the marriage settlement agreement, a total of $2,214.36 on the mortgage and a total of $900 on the equity line of credit. The total debt on the residence would have been $84,668.28, the real estate commission would have been $6,234, and the lawyer's fee would have been $39. The net proceeds would have been $12,958.72. The wife would have received the first $5,000, and the remaining $7,958.72 would have been split between the parties.
It is interesting to note that if the house had sold on March 9, 2002, for $92,000, the price for which it sold on January 27, 2003, the husband would have received substantially less than the amount calculated in the previous paragraph. After subtracting the mortgage debt, the real estate commission, and fees, the net proceeds would have been $1,772.72. Under the marriage settlement agreement, the wife would have received all of those net proceeds.
In light of the foregoing discussion and considering the marriage settlement *838 agreement as a whole, the trial court's finding that the husband should be credited with $8,342 because the trial court found that a reasonable time period applied to how long the provisions of section 3.1 of the agreement should be operative is wrong.
The trial court also erred when it found that there was an accord and satisfaction between the husband and the wife. Section 7-3-311, Ala.Code 1975, entitled "Accord and satisfaction by the use of instrument," provides in part:
"(a) If a person against whom a claim is asserted proves that (I) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply."
Section 7-3-103(a)(4), Ala.Code 1975, defines "good faith" as "honesty in fact in the conduct or transaction concerned."
The husband did not satisfy the threshold requirements for an accord and satisfaction. The claim is neither unliquidated, nor is there a bona fide dispute. The husband's obligation, pursuant to section 7.1 of the marriage settlement agreement, is
"to [pay] the Wife the sum of $8,750, in 22.72 monthly payments of $385.00 each over a term not to exceed 28 months. Payments shall begin on the first day of the month following the closing of the sale of the marital residence."
The claim is liquidated. "A liquidated demand in this connection is said to exist when `the amount due has been ascertained and agreed upon by the parties.'" Wilson v. Monette, 224 Ala. 106, 109, 139 So. 264, 266 (1932)(quoting 1 C.J., Accord & Satisfaction § 75 (1914)).
"The payment of an amount less than that for which the debtor is liable does not constitute a valid accord and satisfaction, unless there is a bona fide dispute or controversy as to the amount due by the debtor. 1 Corpus Juris, p. 554, § 74. While it is not necessary that the dispute should be well founded, it is necessary that it be in good faith. Without an honest dispute, an agreement to take a less amount in payment of a liquidated claim is without consideration and void. A dispute cannot be raised for the mere purpose of extorting money. 1 C.J. p. 554, § 75. A person cannot create a dispute sufficient as a consideration for a compromise by a mere refusal to pay an undisputed claim. That would be extortion and not compromise. There must be a dispute or doubt as to the right of the parties honestly entertained. De Mars v. Musser-Sauntry Land Co., 37 Minn. 418, 35 N.W. 1 [(1887)]. There must, in fact, be a dispute, an honest disagreement, and the amount of the account fairly in dispute."
Southern Cotton Oil Co. v. Currie, 20 Ala. App. 1, 2, 102 So. 149, 150 (1922), cert. denied, 207 Ala. 704, 93 So. 662 (1922). The reason why there must be a bona fide dispute as to the amount due in such cases is that without some concession there would be no valid consideration for the agreement for satisfaction. Ex parte Southern Cotton Oil Co., supra.
Here, there was no bona fide dispute. Section 7.1 of the marriage settlement agreement lays out that the payments under 7.1 are to begin on the first day of the month after the closing of the sale of the marital residence. The obligations under section 3.1 are to be in effect until the closing date of the sale. The property-settlement amount to be paid is fixed. The duration of the obligation is certain. Although the husband marked the check *839 "property settlement-payment in full" and the wife cashed the check, there was no satisfaction. Without a bona fide dispute, there was no consideration for the accord, and thus no subsequent satisfaction. See Ex parte Southern Cotton, supra.
Because there was no consideration, there is no valid accord and satisfaction. See Ex parte Meztista, 845 So.2d 795 (Ala. 2001). The majority opinion relies heavily on Ex parte Meztista. Meztista and Hylton were partners in an advertising business that was winding up its affairs. The partners had agreed to split the profits and liabilities. Meztista informed Hylton that her share was $17,617.84. Hylton disputed that amount, but was not given the opportunity to review the partnership's books. Although Meztista did not tender an explanation, he did tender to Hylton a check for $17,617.84, which was marked as "payment in full." Hylton cashed the check. The supreme court held:
"`[A] party in Hylton's position has two options: (1) reject the offer of the check as full satisfaction of the disputed claim; or (2) accept the offer of the check as a full satisfaction by cashing or depositing the check. Public Nat'l Life Ins. Co. v. Highsmith, 47 Ala.App. 488, 256 So.2d 912 (Ala.Civ.App.1971). The supreme court has held that a party in Hylton's position does not have the option of accepting the offer of the check and placing a restrictive endorsement on it. Boohaker v. Trott, 274 Ala. 12, 16, 145 So.2d 179, 183 (1962).'"
Ex parte Meztista, 845 So.2d at 797 (quoting Hylton v. Meztista, 845 So.2d 792, 795 (Ala.Civ.App.2000)(Crawley, J., dissenting)).
The majority opinion quotes the above language from Meztista, substituting "[the wife's] position" for "Hylton's position." Hylton's position  i.e., the dispute in Ex parte Meztista  involved an unliquidated debt. Hylton had the absolute right to examine the partnership books and she disputed the amount that she was owed. When she cashed the check that was tendered as payment in full, she accepted the offer as a full satisfaction of her claim. The consideration was her waiving the right to examine the partnership books and to force an accounting. She surrendered those rights when she accepted the offer of the check as payment in full by cashing the check.
Here, the husband tendered to the wife a check for $840 marked "property settlement-payment in full." The wife cashed the check, and, had the debt been unliquidated or the dispute bona fide, then her cashing the check would have been a satisfaction. However, the wife was entitled to "the sum of $8,750, in 22.72 monthly payments of $385.00 each over a term not to exceed 28 months." The wife was not in the same position as Hylton. The wife had litigated and had settled her claim. The marriage settlement agreement was incorporated into the divorce judgment. The debt was liquidated. There was no consideration to support a satisfaction because the dispute was not bona fide. The wife gave up nothing, and there was, therefore, no consideration.
The husband also sent a letter indicating that he was discounting $7,910 from the $8,750 he owed the wife under section 7.1 of the marriage settlement agreement because he had paid the mortgage payments for several months longer than he had anticipated. In the letter, the husband states:
"I trust neither you nor I would have signed the mediation agreement knowing what we know now. I know I would not have agreed, especially with [the University of North Alabama] pulling out of our deal the way they did. It was never intended for you to have your *840 living expenses lessened for well over a year by my income, and still expect the full benefit of the document concerning the property settlement as if the 15 months had not transpired."
In fact, the marriage settlement agreement contemplated just the situation that the husband refers to in his letter. The marriage settlement agreement contemplated that the option might not be exercised. Section 3.1 of the marriage settlement agreement specifically outlines how the net proceeds from the sale of the house will be distributed if the option is exercised, but it also contains provisions for how the net proceeds will be divided if the option is not exercised. The provisions of the marriage settlement agreement are in direct conflict with the husband's assertions in his letter. The marriage settlement agreement provides "[i]f the option to purchase is not exercised, the Wife shall have the use and possession of the residence and the parties shall divide equally the monthly mortgage payment[s]." "A dispute cannot be raised for the mere purpose of extorting money," and "[a] person cannot create a dispute sufficient as consideration for a compromise by a mere refusal to pay an undisputed claim. That would be extortion, and not compromise." Southern Cotton Oil Co. v. Currie, 20 Ala. App. at 2, 102 So. at 150.
The trial court interpreted the marriage settlement agreement in a way that is contrary to the plain language of the agreement and in a manner that abrogated the intent of the parties, and the trial court did not consider the document as a whole. Additionally, the husband failed to establish that his offer of an accord was made in good faith or that the dispute was bona fide. I would reverse the trial court's judgment and render a judgment for the wife granting her petition to hold the husband in contempt, ordering the husband to make payments pursuant to section 7.1 of the marriage settlement agreement, plus interest on all payments past due, and awarding the wife an attorney fee in the amount of $1,000.
PITTMAN, J., concurs.
NOTES
[1] The timeliness of the husband's assertion of the affirmative defense of accord and satisfaction was not raised by the wife. An issue not raised on appeal is deemed to have been waived. Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994).
[2] Section 7-3-311, Ala.Code 1975, is entitled:

"Accord and satisfaction by use of instrument."
That statute provides, in pertinent part:
"(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
"(b) ... [T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."
(Emphasis added.)